**Nancy C. SCHIELE, Plaintiff,**

v.

**CHARLES VOGEL MANUFACTURING CO., INC., a Wisconsin corporation, Harvey Vogel Manufacturing Co., a Minnesota corporation, and H. Charles Vogel, Jr., Defendants.**

Civ. No. 4–90–591.

United States District Court,
D. Minnesota,
Fourth Division.

March 23, 1992.

David W. McKenna, Tracey A. Sykes, Nancy J. Nelson and Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for plaintiff.

Duane Eugene Arndt and Arndt & Benton, Minneapolis, Minn., for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiff's motion to amend her complaint and defendants' motion for summary judgment. Based on a review of the file, record and proceedings herein, the court grants plaintiff's motion to amend, and grants in part and denies in part defendants' motion for summary judgment.

## BACKGROUND

Plaintiff Nancy C. Schiele ("Schiele") brings the present action against defendants H. Charles Vogel, Jr. ("Vogel"), Harvey Vogel Manufacturing Co. and Charles Vogel Manufacturing Co., Inc. (referred to collectively as defendants). Schiele is a resident of Minnesota. Charles Vogel Manufacturing Co., Inc., is a Wisconsin corporation with its principal place of business in Prescott, Wisconsin (the Wisconsin facility). Harvey Vogel Manufacturing Co., a Minnesota corporation, has its principal place of business in Minnesota (the Minnesota facility). Vogel is chairman of the board of the Minnesota facility, and chairman of the board and president of the Wisconsin facility. He is also the sole shareholder of both companies. Vogel lives in Wisconsin, but commutes to work every day at the Minnesota facility.

In November 1987, Schiele was hired to work as a temporary accounting clerk at the Minnesota facility. At the end of December, she was transferred to the Wisconsin facility. Schiele continued to work at the Wisconsin facility until September 26, 1988, when she quit her job, claiming that the working conditions were intolerable because Vogel repeatedly subjected her to unwelcome physical contact and verbal communications of an intimidating, abusive

and sexual nature.[1] Although on several occasions Schiele complained to her immediate supervisor, Wayne Hald, about Vogel's conduct, explaining that she found Vogel's language and conduct offensive, demeaning and unacceptable, she claims that Hald merely suggested that she look for another job. Despite her complaints to Hald, Schiele claims that the corporate defendants were either unwilling or unable to influence or control Vogel's behavior because Vogel let it be known that he would fire anyone who dared to complain about his conduct or the manner in which he ran his companies. (Vogel Dep. pp. 95–96, 100–01).

Schiele claims that she did not bring her objections directly to Vogel's attention until late September 1988, because she was afraid that he might retaliate against her or terminate her employment. When Schiele finally told Vogel that she objected to the manner in which he treated and spoke to her, she contends that he became extremely angry and told her that if she did not like his treatment, she could leave. She claims that his explosive reaction caused her to fear for her physical safety and she never returned to work after the confrontation. Schiele therefore contends that she was constructively discharged. Schiele further claims that as a result of defendants' abusive and hostile conduct, she has suffered and continues to suffer severe emotional and mental distress in addition to other damages.

Less than two days after Schiele left defendants' employ, Vogel called a meeting of her former co-workers. Schiele alleges that at that meeting, Vogel explained that Schiele had quit her job and he asked the eight or nine employees in attendance if any of them were her friends. After some of the employees raised their hands, Vogel told them that Schiele was "a thief due to the fact that she steals from the company." Vogel then asked employees again whether any of them were Schiele's friend and only one employee raised her hand.

Schiele finally alleges that when she was first employed at the Wisconsin facility, she held the position of office manager and was paid $22,000.00. In early 1988 she contends that she was relieved of those duties and replaced by a man who performed the same duties but was paid $16,000 more than Schiele had been paid.

Based on the foregoing, Schiele asserts claims of hostile environment sexual harassment pursuant to Title VII, claims of sexual harassment and discrimination under the Minnesota Human Rights Act, a claim of wage discrimination under Minn. Stat. § 181.67, and state law claims of defamation, intentional and negligent infliction of emotional distress.[2] Defendants move for summary judgment on all of Schiele's claims.

## DISCUSSION

■■■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genu-

---

1. For example, Schiele alleges that on one occasion Vogel delivered a note to Schiele which read "chocolate chip cookies are great but my favorite is Pussy—I don't mean cats either." (Schiele Dep. at 142.)

2. Schiele also asserted a claim for invasion of privacy under Wis.Stat. § 895.50. However, she seeks permission to amend her complaint to delete that claim. As discussed *infra,* the court dismisses that claim without prejudice.

ine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider each of Schiele's claims.

### I. *Schiele's Title VII Claim*

■ Defendants move for summary judgment on Schiele's sexual harassment claim under Title VII. Defendants first argue that her claim should be dismissed as untimely to the extent that it involves allegations concerning the Minnesota facility. On November 16, 1988, Schiele filed a discrimination charge with the Milwaukee District Office of the United States Equal Employment Opportunity Commission ("EEOC"). On November 17, 1988, the EEOC transmitted the charge to the Wisconsin Equal Rights Division, Department of Industry, Labor and Human Relations. It is undisputed that Schiele identified only Vogel and the Wisconsin facility as respondents in her charge. In her complaint, however, Schiele alleges that she began her employment with defendants at the Minnesota facility in November 1987 and was transferred to the Wisconsin facility on December 29, 1987. She also alleges three

incidents of sexual harassment while she was employed at the Minnesota facility. None of those incidents, however, were set forth in her administrative charge and they all occurred more than 180 days before she filed her charge. Defendants thus contends that Schiele's claims against the Minnesota facility should be dismissed as untimely.

■ Schiele does not dispute the fact that her EEOC charge failed to identify the Minnesota facility as a respondent, but argues that her claim should be permitted because the Minnesota facility had both notice of her charge and an adequate opportunity to participate in conciliation. Under Title VII, an individual who believes that the act has been violated must file a charge with the EEOC within 180 days of the unlawful employment action.[3] A claimant who fails to name a party in the administrative charge generally may not sue that party under Title VII. *See, e.g., Eggleston v. Chicago Journeymen Plumbers Local Union No. 130, U.A.,* 657 F.2d 890, 905 (7th Cir.1981) (citations omitted). That requirement, however, is not jurisdictional and an unnamed party may still be subject to suit if the:

> unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance, the charge is sufficient to confer jurisdiction over that party.

*Id.* (citations omitted); *Greenwood v. Ross,* 778 F.2d 448, 450–51 (8th Cir.1985) ("A suit is not barred 'where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation.'" *quoting Romero v. Union Pac. R.R.,* 615 F.2d 1303, 1311 (10th Cir.1980)).

In *Arenas v. Ladish Co.,* the district court permitted suit against plaintiff's su-

---

**3.** Title VII specifically requires that:
A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred....
42 U.S.C. § 2000e–5(e).

pervisor under circumstances similar to those in the present case. 619 F.Supp. 1304, 1308 (E.D.Wis.1985), *dismissed on other grounds,* 1986 WL 617 (E.D.Wis. Jan. 22, 1986). Arenas filed a charge with the EEOC alleging sexual discrimination and harassment, but named only the company as the discriminating party, failing to name her supervisor as respondent. *Id.* at 1307. Following the analysis set forth in *Eggleston,* the court first determined that the supervisor had adequate notice of the charge because he was named as the perpetrator of several incidents of alleged discrimination and personally testified before the EEOC. *Id.* at 1308 (citing *Eggleston,* 657 F.2d at 905). The court further concluded that the supervisor had an adequate opportunity to conciliate because the employer had such an opportunity and the supervisor's "conciliation interests were commensurate with [his employer's]." *Id.* The court thus permitted Arenas to bring suit against her supervisor. *Id.*

Relying on *Arenas,* Schiele argues that she provided the Minnesota facility with adequate notice of her charge by naming Vogel, the corporation's chairman of the board and sole shareholder, as the perpetrator of the unlawful conduct. *See Eggleston,* 657 F.2d at 907 ("if a party has a close relationship with a named respondent ... and has actual notice of the EEOC charge [that party] 'should not be heard to cry "foul" when later made a defendant'" (citations omitted)). She further alleges that the attorneys for the Minnesota facility are the same attorneys who represented both Vogel and the Wisconsin facility in the proceedings before the EEOC. Thus, she argues that the Minnesota facility, through the involvement of its attorneys and Vogel, as its sole stockholder and chairman of the board, had an adequate opportunity to conciliate with the EEOC. It is also undisputed that Schiele named Vogel and the Wisconsin facility in her charge and that both had an adequate opportunity to conciliate with the EEOC. Based on the foregoing, the court finds that Schiele raises a material fact dispute about whether the Minnesota facility received adequate notice or had an opportunity to conciliate.

■ Schiele also argues that the Minnesota and Wisconsin facilities should be considered a single employer for purposes of the charge filing provision of Title VII. Some courts permit two corporate entities to be deemed a single employer for purposes of permitting an unnamed defendant to be sued. *Sedlacek v. Hach,* 752 F.2d 333, 335–36 (8th Cir.1985); *Escamilla v. Mosher Steel Co.,* 386 F.Supp. 101, 105 (S.D.Tex.1975) (parent corporation had or should have had notice of charge and opportunity to conciliate through its wholly owned subsidiary). In *Sedlacek,* the Eighth Circuit determined that a partnership and a corporation constituted a single employer for purposes of Title VII's notice and conciliation requirements because the two partners in the partnership were also the primary owners and managers of the corporation. 752 F.2d at 336. Thus, the Eighth Circuit concluded that naming the corporation in the charge was also sufficient to provide the partnership with notice because the two partners, as owners and managers of the corporation, actually received notice of the charge "and either knew or should have known that the interrelation between [the corporation and partnership] would cause the [partnership] to be implicated as well." *Id.*

■ Courts examine various factors to determine whether two companies constitute a single employer, including:

1. Interrelation of operations,
2. Common management,
3. Centralized control of labor relations, and
4. Common ownership or financial control.

*EEOC v. Upjohn Corp.,* 445 F.Supp. 635, 638–39 (N.D.Ga.1977) (citing *Radio Union v. Broadcast Serv.,* 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965)) (adopting NLRB's single employer standard in a Title VII action to analyze whether naming a subsidiary in a charge was sufficient to notify parent company).

Schiele contends that under that analysis, the two companies constitute a single employer because they have common own-

ership, financial control and management. Vogel, the alleged perpetrator of much of the sexual harassment, is the sole shareholder of both corporations and is also the president and chairman of the board of the Minnesota facility and chairman of the board and president of the Wisconsin facility. Moreover, Schiele was employed at both facilities and alleges an ongoing pattern of sexual harassment conducted at both facilities by the same individual, Charles Vogel.[4] Schiele also proffers evidence demonstrating the interrelationship of the operations and the centralized control of the employees at the two facilities.[5] The court thus determines that interrelationship between Vogel, the Minnesota facility and the Wisconsin facility may be sufficient to deem the two facilities a single employer for purposes of Schiele's Title VII claims. See Sedlacek, 752 F.2d at 335–36.

Based on the foregoing, the court concludes that there is a material fact dispute concerning whether the Minnesota and Wisconsin facilities are a single employer for purposes of the notice and conciliation requirements of Title VII and whether those requirements were fulfilled for purposes of Schiele's claims against the Minnesota facility. Thus, the court denies defendants' motion for summary judgment based on Schiele's failure to name the Minnesota facility in her administrative charge.

▆▆▆▆ Defendants also contend that summary judgment must be granted on Schiele's claim as it concerns sexual harassment at the Minnesota facility because those alleged violations occurred more than 180 days before Schiele filed her charge. Defendants' argument, however, fails to acknowledge that Schiele alleges sexual harassment of a continuing nature. Under Title VII, if a plaintiff alleges an ongoing course of sexual harassment, the charge may encompass unlawful conduct outside the charge filing period as long as at least one incident of unlawful conduct occurred within the requisite period of time. See, e.g., Burns v. McGregor Elec. Indus., 955 F.2d 559, 562 (8th Cir.1992) (court could properly consider evidence of sexual harassment occurring more than 180 days before charge filing period where plaintiff alleged "a continuing course of harassment"); Waltman v. International Paper Co., 875 F.2d 468, 474–76 (5th Cir.1989) (reversing district court's determination that acts of sexual harassment, occurring more than 180 days before charge was filed, were untimely because plaintiff raised a material fact dispute concerning the existence of a continuing violation); Satz v. ITT Financial Corp., 619 F.2d 738, 743–44 (8th Cir.1980) (adopting continuing violation doctrine for sex discrimination action under Title VII). Schiele alleges a pattern and practice of ongoing sexual harassment consisting of similar violations by one individual, Vogel, that began at the Minnesota facility and then continued at the Wisconsin facility. She also alleges more than one incident of harassment occurring within the 180 day period. Thus, the court finds that Schiele raises a material fact dispute regarding the existence of a continuing violation and denies defendants'

---

**4.** Schiele also argues that the Minnesota facility is a proper party because the corporate veil should be pierced. Because the court denies defendants' motion for summary judgment on an alternative basis, the court does not address that issue.

**5.** For example, while employed at the Wisconsin facility, Schiele was supervised by personnel from the Minnesota facility, including Vogel and Wayne Hald, the controller of both corporations. Schiele was interviewed and selected for her position at the Wisconsin facility by employees of the Minnesota facility. In addition, Schiele's transfer to the Wisconsin facility was originally proposed by two managers of the Minnesota facility, Hald and Jerry Hetland.

During the time in which she worked for the Wisconsin facility, Schiele's medical insurance was provided by the Minnesota facility.

Vogel's deposition testimony also demonstrates that he completely controls the policy and business practices of both corporate defendants. Vogel maintains an office at the Minnesota facility where he performs tasks for both corporations. The operations of the two facilities are further interrelated because the Wisconsin facility pays the Minnesota facility to perform many accounting and recordkeeping functions and all three defendants are insured against property loss and liability through a single insurance contract.

motion for summary judgment on the timeliness of the alleged violations at the Minnesota facility. *See Burns,* 559 F.2d at 562.

▮ Defendants also move for summary judgment Schiele's Title VII claim based on their contention that Schiele's allegations concerning Vogel's "tough talk" and her subjective beliefs concerning his intent are insufficient to support a claim of constructive discharge. They further contend that Schiele fails to present a prima facie case of discrimination.

The court first rejects defendants' contention that Schiele fails to raise a material fact dispute concerning her claim of constructive discharge. Schiele contends that when she confronted Vogel about the alleged sexual harassment, his response was so explosive that she became afraid "for her physical safety" and never returned to work after the altercation. That confrontation alone may be sufficient to establish constructive discharge. *See Glass v. IDS Fin. Serv.,* 778 F.Supp. 1029, 1055 (D.Minn. 1991) ("'A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job.'" *quoting Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981) (quotation omitted)). Schiele, however, alleges constructive discharge based not only on that confrontation but also as the result of an ongoing practice of sexual harassment:

> When an employer fails to protect an employee from sexual harassment, thereby forcing the employee to endure an

offensive environment or to quit working, the harassment becomes a "condition of employment" prohibited by Title VII.

*Zabkowicz v. West Bend Co.,* 589 F.Supp. 780, 783 (E.D.Wis.1984) (citations omitted).[6] Schiele proffers significant evidence of sexual harassment that is sufficiently egregious to support her assertion that her work conditions became such that a reasonable person would have found them abusive and intolerable. *See Burns,* 559 F.2d at 563, 564, (examining constructive discharge claim based on ongoing sexual harassment and holding that to establish a prima facie case, harassment must be severe enough so that a reasonable person would consider the environment to be abusive). Moreover, Vogel does not deny most of Schiele's allegations, but instead characterizes his alleged statements as "tough talk" that is not actionable because "other employees were exposed to the same verbal comments and did not leave their employment".[7] The court, however, rejects defendants' justifications and finds that Schiele proffers sufficient evidence to raise a material fact dispute concerning constructive discharge.

▮ The court further finds that Schiele's claim is sufficient to establish a prima facie case of hostile environment sexual harassment under Title VII. A plaintiff establishes such a prima facie case by showing that:

1. she is a member of a protected group;

---

**6.** For purposes of Title VII, the EEOC defines sexual harassment as:
Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.
29 C.F.R. 1604.11(a).

**7.** Defendants also attempt to justify the alleged sexual harassment by proffering evidence that Vogel's actions were prompted by his belief that Schiele was not performing her job up to defendants' expectation. Defendants attempt to argue that the evidence is sufficient under *McDon-*

*nell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) to shift the burden to Schiele show that the proffered reason for Vogel's actions was pretextual. The court, however, rejects that contention, noting that *McDonnell Douglas* and its progeny do not stand for the proposition that an employee's allegedly inadequate job performance provides a legitimate, nondiscriminatory motive for sexual harassment of the type alleged by Schiele. *Cf. Jones v. Wesco Inv.,* 846 F.2d 1154, 1157 n. 6 (8th Cir.1988) (rejecting employer's attempts to justify similar sexual harassment by characterizing it as a "'natural interaction between genders' which must be permitted to prevent 'the collapse of our commercial system or the end of the human race'").

2. she was subjected to unwelcome sexual harassment;

3. the harassment was based on sex;

4. the harassment affected a term, condition, or privilege of employment; and

5. the employer knew or should have known of the harassment and failed to take proper remedial action.

*Burns,* 559 F.2d at 564, (citing *Staton v. Maries County,* 868 F.2d 996, 998 (8th Cir. 1989)). Examining those elements, it is undisputed that Schiele is a member of a protected class. Defendants also fail to dispute Schiele's claim that the sexual harassment was unwelcome. Schiele also alleges sufficient evidence to support the inference that Vogel's alleged harassment was based on her sex. *See Burns,* 559 F.2d at 564 ("sexual behavior directed at a woman raises the inference that the harassment is based on her sex" (citations omitted)); *cf. Hall v. Gus Constr.,* 842 F.2d 1010 (8th Cir.1988) (acts of harassment need not be sexual in nature, but may include "any harassment or other unequal treatment of an employee ... that would not occur but for the sex of the employee"). As noted above, Schiele also proffers sufficient evidence to raise a material fact dispute concerning whether the harassment was sufficiently severe to create an abusive work environment. Finally, Vogel, as the alleged perpetrator and Schiele's employer, clearly knew of his own actions and failed to take any corrective action. *Id.* at 564, ("employer clearly knew of harassment" where one of the alleged perpetrators was also the owner of the plant). The court thus concludes that Schiele's claim is sufficient to establish a prima facie case of hostile environment sexual harassment.

Based on the foregoing, the court denies defendants' motion for summary judgment on Schiele's Title VII claim.

II. *Schiele's State Law Claims*

██ Schiele asserts a claim for invasion of privacy under Wis.Stat. § 895.50. She moves to amend her complaint to withdraw that claim pursuant to Federal Rule of Civil Procedure 15(a). Defendants do not op-

pose that motion. Accordingly, the court grants her motion and dismisses that claim without prejudice.

Schiele also brings claims of sexual harassment, sexual discrimination and wage discrimination under Minnesota statute and common law claims of defamation, and intentional and negligent infliction of emotional distress. Schiele contends that Minnesota law should be applied to her claims and that defendants' motion for summary judgment must be denied because all of her claims raise material fact disputes under Minnesota law. Defendants, however, ask the court to apply Wisconsin law, and argue that Schiele's claims fail under Wisconsin law. The court will thus analyze the horizontal choice of law question before reaching the merits of Schiele's state law claims. Three questions must be answered when analyzing such questions:

1. Is there a conflict between the state laws that may be outcome determinative? *Cargill, Inc. v. Products Eng'g Co.,* 627 F.Supp. 1492, 1495 (D.Minn.1986) (citing *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973)).

2. Do the forum and alternative states both have sufficient contacts so that the application of either state's law satisfies constitutional due process? *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 313–14, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981) (plurality).

3. Applying the choice of law analysis of the forum state, which state's law should apply? *Klaxton Co. v. Stentor Elec. Motor Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941) (a district court sitting in diversity should apply the choice of law analysis of the state in which is presides to determine the applicable law); *Filz v. Mayo Found.,* 136 F.R.D. 165, 167 n. 3, 172–74 (D.Minn.1991) (discussing procedures federal courts follow when presented with both horizontal and vertical choice of law questions).

██ Turning to the first question, the parties do not dispute that an outcome determinative conflict of laws exist between

Wisconsin and Minnesota law. Examining the relevant case law, the court determines that application of Wisconsin law forecloses Schiele's state law claims, while Minnesota law permits such claims.[8] The court thus concludes that an outcome determinative conflict exists.

Examining the constitutionality of the application of either Wisconsin or Minnesota law, the court determines that Wisconsin has sufficient contacts to justify the application of its law.[9] Although defendants argue that Minnesota has insufficient contacts to satisfy constitutional due process, the court finds that the following contacts are sufficient to permit application of Minnesota law:

1. Schiele is a Minnesota resident;

2. One of the defendants, Harvey Vogel Manufacturing, is a Minnesota corporation with its principal place of business in Minnesota;

3. Schiele was originally hired at the Minnesota facility and alleges that three incidents of sexual harassment occurred there;

4. Charles Vogel is chairman of the board of the Minnesota facility;

5. Charles Vogel conducts a substantial portion of his business through defendants' Minnesota facility;

6. Charles Vogel commutes to work in Minnesota almost daily;

7. Many of the administrative affairs of defendants' Wisconsin facility are handled through Minnesota and the Minnesota facility; and

8. The two corporations share key employees, management and ownership.

*See Hague*, 449 U.S. at 313–20, 101 S.Ct. at 640–44 (upholding application of Minnesota law to accident where insurance company did business in Minnesota, decedent's widow became a Minnesota resident prior to litigation, and decedent was a resident of Wisconsin but commuted to Minnesota for work every day, although fatal crash occurred in Wisconsin and decedent was not going to work at that time); *Counters v. Farmland Indus.*, 1988 WL 134800, at *2 (Minn.Ct.App.1988) (finding application of Minnesota discrimination law to employment dispute constitutional, even though employee worked for defendant in North Dakota at time dispute arose, because plaintiff was originally hired for a sales

---

**8.** If Wisconsin law governs the adjudication of Schiele's claims of infliction of emotional distress, defamation and sexual harassment, Schiele contends that she will be denied relief for her alleged injuries because she did not pursue her remedies under the Wisconsin Workers' Compensation Act and the Wisconsin Fair Employment Practices Act. Wisconsin courts interpret the Wisconsin Workers' Compensation Act to preempt most common law claims asserted by employees:

> Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier. This section does not limit the right of an employe to bring action against any coemploye for an assault intended to cause bodily harm, or against a coemploye for negligent operation of a motor vehicle not owned or leased by the employer, or against a coemploye of the same employer to the extent that there would be liability of a governmental unit to pay judgments against employees under a collective bargaining agreement or a local ordinance.

Wis.Stat. § 102.03(2). Thus, an employee may not bring an action for intentional infliction of emotional distress, *e.g., Jenson v. Employers Mutual Casualty Co.*, 160 Wis.2d 263, 468 N.W.2d 1 (1991) (construing statute); or negligent infliction of emotional distress, *e.g., Busse v. Gelco Express Corp.*, 678 F.Supp. 1398, 1400 (E.D.Wis. 1988) (holding that section 102.03(2) bars such claims); or defamation, *e.g., Becker v. Automatic Garage Door Co.*, 156 Wis.2d 409, 456 N.W.2d 888, 891–92 (Wis.Ct.App.1990). As discussed *infra*, however, employees may assert such claims under Minnesota law.

The Wisconsin Fair Employment Act, Wis. Stat. §§ 111.31, *et seq.*, would also preempt Schiele's statutory claims under Minn.Stat. § 181.67, wage discrimination, and Minn.Stat. § 363.03, sexual harassment and discrimination.

**9.** Those contacts include: Charles Vogel Manufacturing Co. is a Wisconsin corporation with its principal place of business in Wisconsin; Charles Vogel is a resident of Wisconsin; many of the alleged violations occurred at the Wisconsin facility; Schiele filed a charge of discrimination with the EEOC in Wisconsin; and Schiele applied for unemployment benefits in Wisconsin. The parties do not dispute the determination that Wisconsin has sufficient contacts to justify application of its law.

position in Minnesota and worked in Minnesota for five years); *cf. Houle v. Stearns–Rogers Mfg. Co,* 279 Minn. 345, 157 N.W.2d 362, 365 (1968) (Minnesota may assert jurisdiction over workers' compensation claim "on the sole ground that the contract of employment was entered into in the State of Minnesota"). The court thus concludes that it may apply either state's law without offending due process.

 Finally, the court must apply Minnesota's choice of law analysis to determine which state's law to apply. Minnesota has adopted the choice-influencing considerations test as its choice of law method. *See Milkovich,* 203 N.W.2d at 412 (explicitly adopting Leflar's method, citing Robert Leflar, *Choice–Influencing Considerations in Conflicts Law,* 41 N.Y.U. L.Rev. 267, 279 (1966)).[10] Under that method, the court examines the following five factors:

 a. Predictability of results;
 b. Maintenance of interstate and international order;
 c. Simplification of the judicial task;
 d. Advancement of the forum's governmental interest; and
 e. Application of the better rule of law.

*Id.* The court will examine the *Milkovich* factors to determine whether it should apply Minnesota or Wisconsin law.

### A. Predictability of Results

Schiele argues that predictability of results has little relevance in the present case because this factor is more critical in the context of contractual and other consensual arrangements and Schiele asserts tort claims. *See Milkovich,* 203 N.W.2d at 412 ("basically this test relates to consensual transactions where people should know in advance what law will govern their act"). Defendants contend, however, that the factor is relevant and favors application of Wisconsin law because Schiele's claims flow from an employment relationship grounded in Wisconsin. Assuming that this factor is relevant in the present context, the court nonetheless rejects defendants' claim that Wisconsin law offers a

more predictable result. Schiele is a Minnesota resident who was originally hired and worked at the Minnesota facility. Vogel commutes to work at Minnesota facility virtually every day and his alleged harassment began at the Minnesota facility. Even while employed at the Wisconsin facility, Schiele proffers evidence demonstrating that she was subject to the control, supervision and direction of personnel from the Minneapolis facility, including Wayne Hald, comptroller of both corporations, Charles Reimer and Vogel. In addition, the decision to transfer Schiele to the Wisconsin facility was initially proposed by Hald and Jerry Hetland, two managerial employees of the Minnesota facility. Based on the foregoing, the court determines that defendants knew or should have known that Minnesota law may govern Schiele's claims. *See Counters,* 1988 WL 134800, at *2 (upholding application of Minnesota law under *Milkovich* because employer "should have known that an employment relationship originally entered into in Minnesota might be subject to Minnesota discrimination laws"). Thus, if this case is characterized as primarily a contractual rather than tortious claim, the court concludes predictability of results favors application of Minnesota law.

### B. Maintenance of Interstate Order

Defendants contend that most of the significant contacts with Schiele's state law claims arise out of her employment relationship in Wisconsin and that applying Minnesota law would thus result in a breakdown in interstate order, impermissible forum shopping and extraterritorial application of Minnesota law in Wisconsin. Defendants argue that application of Wisconsin law would preserve interstate order, relying on *Standal v. Armstrong Cork Co.,* 356 N.W.2d 380 (Minn.Ct.App.1984) to support their position. In *Standal,* the Minnesota Court of Appeals noted that "maintenance of interstate order requires only that the state whose laws are ultimately applied has a substantial connection

10. Wisconsin has also adopted the choice-influencing considerations test as its analysis. *See*

*Heath v. Zellmer,* 151 N.W.2d 664, 672 (Wisc.1967).

with the facts and the particular issue." *Id.* at 381–82 (citing *Milkovich*, 203 N.W.2d at 412). In the present case, both Minnesota and Wisconsin have substantial contacts with Schiele's state law claims. As previously noted, Schiele is a Minnesota resident, originally employed in Minnesota by a Minnesota company and supervised by employees at the Minnesota facility even after her transfer, who asserts claims involving the actions of the chairman of the board of the Minnesota company who commutes to work in Minnesota almost every day. Although Wisconsin also has significant contacts, it is an oversimplification to characterize Schiele's case as one involving only a Wisconsin employment relationship. The court thus rejects defendants' claim that the application of Minnesota law would "work an absolutely catastrophic result". Defendants also fail to articulate any particular way in which interstate order would be threatened by application of Minnesota law. Moreover, examining the interests of the two states, the court notes that both states have a policy of compensating employees for injuries suffered at the hands of their employers and that application of Minnesota law is foreseeable on the present facts.[11] *See Counters*, 1988 WL 134800, at *2 (Minnesota retains interest in employment relationship originally formed within its boundaries and application of its law is foreseeable in such circumstances). Concerns about forum shopping also lessens when a plaintiff is a resident of the state in which suit is brought. *See Stenzel v. State Farm Mutual Automobile Ins. Co.*, 379 N.W.2d 674, 676 (Minn.Ct.App. 1986) (citing *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 49 (Minn.1978), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)). Based on the foregoing, the court finds that Minnesota courts would likely apply Minnesota law, and that such application is consistent with Minnesota state policy and does not unduly undermine Wisconsin's policies or threaten interstate order.

## C. Simplification of the Judicial Task

Defendants argue that application of Wisconsin law would not affect the court's judicial task. Under Minnesota law, this factor:

> "generally 'poses no problem since the courts are fully capable of administering the law of another forum if called upon to do so.'"

*Gimmestad v. Gimmestad*, 451 N.W.2d 662, 666 (Minn.Ct.App.1990) (quoting *Milkovich*, 203 N.W.2d at 412). The *Gimmestad* court further noted, however, that:

> this factor is obviously advanced when a Minnesota court applies Minnesota law.

*See id.*[12] Applying this factor, the court concludes that on the present facts a Minnesota court would likely apply its own law for purposes of simplifying the judicial task.

## D. Advance of the Forum's Governmental Interests

Consideration of the fourth and fifth factors carry the most weight in choice of law analysis. *Milkovich*, 203 N.W.2d at 412. In evaluating the forum's governmental interests, the court should not apply "rules, which, however acceptable they may be in other states, are inconsistent with [Minnesota's] concept of fairness and equity." *Hime v. State Farm Fire & Casualty Co.*, 284 N.W.2d 829, 833 (Minn.1979). However:

> [t]his interest will not manifest itself clearly if the out-of-state rule does not run contrary to some strong socio-legal policy of the forum, but it will become a major consideration if there is such a strong opposing local policy.

*Milkovich*, 203 N.W.2d at 414. Defendants contend that "only Wisconsin has an inter-

---

11. Although Wisconsin affords different remedies than Minnesota, both provide a method of compensating such employees.

12. Wisconsin courts have also recognized:
 a court's task is rarely simplified when the lawyers and judges must apply themselves to foreign rather than forum law.

*Heath v. Zellmer*, 35 Wis.2d 578, 151 N.W.2d 664, 673 (Wis.1967) ("forum law should continue to be a primary concern of the forum court").

est in regulating the economic and social consequences of sexual harassment occurring within its borders" and that "Minnesota has no government interest in regulating the relations of employers in the work place in Wisconsin." Such contentions, however, distort Schiele's situation. Wisconsin clearly has an interest in regulating employment relations for Wisconsin employers and provides various remedies for its employees. Those remedies, however, are not available to Schiele. The court thus finds that application of Wisconsin law will undermine Minnesota's interest, as a forum state, in ensuring that its citizens are compensated for injuries that they receive as a result of sexual harassment, defamation or intentional or negligent infliction of emotional distress. That interest is clearly demonstrated by Minnesota case law. *See, e.g., Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428 (Minn.1983) (intentional infliction of emotional distress); *Continental Can Co. v. State*, 297 N.W.2d 241 (Minn.1980) (sexual harassment); *Karnes v. Milo Beauty & Barber Supply Co.*, 441 N.W.2d 565 (Minn.Ct.App.1989) (defamation); *Bohdan v. Alltool Mfg.*, 411 N.W.2d 902 (Minn.Ct.App.1987) (defamation and negligent infliction of emotional distress). The Minnesota Human Rights Act, which provides remedies for sexual harassment, also reflects that interest, specifically defining an "employee" for purposes of the act as "an individual who is employed by an employer and who resides or works in this state." Minn.Stat. § 363.-01, subd. 16. Minnesota also recognizes a governmental interest in regulating the conduct of nonresident employers doing business in this state and in protecting the rights of its residents· even if they are employed in another state. *See Counters*, 1988 WL 134800, at *2. The court thus finds that application of Minnesota law protects the forum's interest while application of Wisconsin law will undermine that interest.

### E. Application of the Better Rule of Law

Defendants argue that Wisconsin's statutory scheme constitutes the better law be-cause "only Wisconsin has an interest in regulating the economic and social consequences of sexual harassment occurring within its borders." The court, however, rejects that argument, noting that Minnesota has a strong governmental interest in protecting its resident employees and substantial contacts with Schiele's claims. The court further notes that if Wisconsin law is applied, Schiele does not have a remedy for many of her claims, a situation that makes it probable that a Minnesota court would choose Minnesota law as the better law. Courts, however, are to evaluate the better law only when the other choice influencing considerations leave the choice of law uncertain. *See, e.g., Myers v. Government Employees Ins.*, 302 Minn. 359, 225 N.W.2d 238, 244 (1974). Because the court determines that application of Wisconsin law will strongly undermine Minnesota's governmental interest, the court does not resolve this issue.[13]

Based on the foregoing, the court concludes that under the *Milkovich* analysis, a Minnesota court would apply Minnesota law to analyze defendants' motion for summary judgment on Schiele's state law claims. The court will thus apply Minnesota law to analyze each claim in turn.

### 1. *Schiele's Defamation Claim*

Under Minnesota law, a defamation claim requires evidence of a false statement that is communicated to a third person which tends to harm the plaintiff's reputation or to lower the plaintiff in the estimation of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980) (citing *Restatement (Second) of Torts* §§ 558–59 (1977)). In the present case, Vogel admits that he publicly accused Schiele of being a thief after she left his employ. Defendants, however, proffer no evidence to indicate that Schiele was a thief. Schiele proffers evidence indicating that his statements were false and recklessly or maliciously made for an improper motive on an improper occasion. The court

---

**13.** The court further notes that although differing significantly, both states provide remedies for employee injuries, and the court declines to label one a better law.

thus finds that Schiele raises a material fact dispute concerning whether his statements were made with malice and for the purpose and effect of injuring Schiele. Based on the foregoing, the court denies defendants' motion for summary judgment on Schiele's defamation claim.

### 2. Schiele's Infliction of Emotional Distress Claims

▮ Schiele also asserts claims for intentional and negligent infliction of emotional distress, contending that Vogel's conduct was atrocious, passed the boundaries of decency and was utterly intolerable to a civilized community. *See Hubbard*, 330 N.W.2d at 437–39. To succeed on her intentional infliction claim, Schiele must show that defendants, by extreme and outrageous conduct, intentionally or recklessly caused her to suffer severe emotional distress. *See Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 378–79 (Minn.Ct.App.1984). On her claim for negligent infliction of emotional distress, Schiele:

> may recover damages for metal anguish or suffering for a direct invasion of [her] rights, such as defamation, malicious prosecution, or other willful, wanton or malicious conduct.

*Bohdan v. Alltool Mfg. Co.*, 411 N.W.2d 902, 907 (Minn.Ct.App.1987) (finding exception to "zone of danger" requirement for negligent infliction claims); *but see Meyer v. Tenvoorde Motor Co.*, 714 F.Supp. 991, 994–95 (D.Minn.1989) (declining to follow *Bohdan* and granting summary judgment on negligent infliction claim even though plaintiff asserted defamation claims that survived summary judgment motion). Examining the record, the court finds that Schiele raises a material fact dispute as to whether Vogel's conduct was "extreme and outrageous" and whether he engaged in

such conduct either intentionally, recklessly or negligently. As previously discussed, Schiele's defamation claim also raises a material fact dispute. *Bohdan*, 411 N.W.2d at 907 (if plaintiff's "defamation action stands, [she] may assert negligent infliction of emotional distress" claim). Thus, the court denies defendants' motion for summary judgment on both the intentional and negligent infliction of emotional distress claims.

### 3. Schiele's State Sexual Harassment and Discrimination Claims

▮ Schiele also asserts sexual harassment and sexual discrimination claims under the Minnesota Human Rights Act.[14] In asserting such claims, a plaintiff has the option of either filing a charge with a "local commission" or the Minnesota Department of Human Rights, or proceeding directly into a state district court. Either option, however, must be pursued within one year. *See* Minn.Stat. § 363.06, subd. 3.[15] Schiele claims that she was constructively discharged as of September 26, 1988, and filed actions in Minnesota and Wisconsin state courts in July 1990. Schiele thus failed to bring a civil action within one year. It is also undisputed that Schiele failed to file a claim with either the Minnesota Department of Human Rights or any Minnesota agency. She relies instead on the claim she filed with the Wisconsin Equal Rights Division of the Department of Industry, Labor and Human Relations, arguing that the Wisconsin agency is a "local commission" for purposes of the Minnesota Human Rights Act. The statute defines "local commission" as:

> "Local commission" means an agency of a city, county, or group of counties created pursuant to law, resolution of a county board, city charter, or municipal ordinance for the purpose of dealing with

---

**14.** Schiele bases her both her federal and state sexual harassment claims on the same conduct. Her claim of sexual discrimination is based on the alleged disparity in compensation paid to Schiele, and her replacement, Charles Reimer.

**15.** That section specifically provides that:
Time for filing a claim. A claim of an unfair discriminatory practice must be brought as a

civil action pursuant to section 363.14, subdivision 1, clause (a), filed in a charge with a local commission pursuant to section 363.116, or filed in a charge with the commissioner within one year after the occurrence of the practice.
Minn.Stat. § 363.06, subd. 3.

discrimination on the basis of ... sex....

Minn.Stat. § 363.01, subd. 23. Schiele argues that the statutory definition does not explicitly limit local commissions to only those agencies found in Minnesota and that the court should construe the term to encompass a Wisconsin agency. The Minnesota Supreme Court has recognized that an agency like the St. Paul Department of Human Rights is a "local commission" for purposes of the statute, *Lewis v. Metropolitan Transit Comm'n*, 320 N.W.2d 426, 429 (Minn.1982), however, the issue of whether an out-of-state agency can be considered a "local commission" is apparently one of first impression. Although the court acknowledges that the Minnesota Human Rights Act should be liberally construed, in the absence of any Minnesota cases construing the term "local commission" so broadly as to include agencies in other states, the court declines to interpret the statute in that manner. Moreover, other sections of the Human Rights Act that include the term "local commission", for example, provisions permitting the commissioner to refer matters to a local commission for a report and recommendation, *see* Minn.Stat. § 363.115, or permitting a local commission to refer a matter under its jurisdiction to the commissioner, *see* Minn. Stat. § 363.116, are inconsistent with Schiele's interpretation of a "local commission" as including an agency outside the borders of the State of Minnesota. Based on the foregoing, the court rejects Schiele's contention that the Wisconsin Equal Rights Division is a local commission for purposes of the Minnesota Human Rights Act.

As a result, the court concludes that Schiele failed to properly institute her claims within the one-year statute of limitations, Minn.Stat. § 363.06, subd. 3, and that her claims thus are barred. *Turner v. IDS Financial Serv.*, 471 N.W.2d 105, 108 (Minn.1991). Accordingly, the court grants defendants' motion for summary judgment on Schiele's claims brought under the Minnesota Human Rights Act.

### 4. *Plaintiff's Wage Discrimination Claim*

 Schiele also asserts a claim for wage discrimination pursuant to Minn.Stat. § 181.67.[16] Minnesota courts apply the *McDonnell Douglas* framework to analyze such claims. *See Kolstad v. Fairway Foods, Inc.*, 457 N.W.2d 728, 734 (Minn.Ct. App.1990). Plaintiffs may establish a prima facie case by showing that a male successor was paid more per year for substantially similar tasks, based on actual job requirements and performance. *See id.* (citing *Danz v. Jones*, 263 N.W.2d 395, 400 (Minn.1978) (quoting 29 C.F.R. 800.121)). Schiele alleges that after she was constructively discharged, defendants hired a man with substantially similar duties who was paid $38,000, which was $16,000 more than Schiele was paid. In his deposition, Vogel admitted that a man was hired to replace Schiele and that her replacement was paid at a much higher salary. Vogel contends, however, that Schiele's replacement had more responsibility.[17] Based on the record, the court determines that there is a material fact dispute regarding whether Schiele's replacement was performing tasks substantially similar to Schiele's, and thus denies defendants' motion for summary judgment on her wage discrimination claim. *See id.*

Based on the foregoing, IT IS HEREBY ORDERED that:

16. That section specifically provides that:
No employer shall discriminate between employees on the basis of sex by paying wages to employees at a rate less than the rate the employer pays to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any other factor other than sex.
Minn.Stat. § 181.67, subd. 1.

17. Defendants also contend that applying the Minnesota statute to a "Wisconsin" employment relationship violates the tenth amendment and notions of comity. As previously determined, however, Schiele is a Minnesota resident and her employment occurred both in Minnesota and Wisconsin. The court thus rejects defendants' contentions.

1. Defendants' motion for summary judgment on Schiele's Title VII claim is denied;

2. Defendants' motion for summary judgment on Schiele's defamation claim is denied;

3. Defendants' motion for summary judgment on Schiele's negligent and intentional infliction of emotional distress claims is denied;

4. Defendants' motion for summary judgment on Schiele's claims asserted under the Minnesota Human Rights Act, Minn.Stat. § 363.01 *et seq.*, is granted;

5. Defendants' motion for summary judgment on Schiele's wage discrimination claim under Minn.Stat. § 181.67 is denied; and

6. Schiele's motion to amend her complaint to dismiss without prejudice her invasion of privacy claim, contained in Count VIII, is granted.