NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

YOLANDA MANZO, *Plaintiff/Appellant*,

*v.*

BRUCE M. HAYMAN, an individual, and BONNIE HAYMAN, his wife;
BRUCE M. HAYMAN, PLLC, an Arizona professional limited liability
corporation, *Defendants/Appellees*.

No. 1 CA-CV 14-0073
FILED 1-27-2015

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2012-018099
The Honorable Sally Schneider Duncan, Judge

**AFFIRMED**

———————————————

COUNSEL

Jaburg & Wilk PC, Phoenix
By Kraig J. Marton and Jeffrey A. Silence
*Counsel for Plaintiff/Appellant*

Robaina & Kresin PLLC, Phoenix
By Edmundo P. Robaina and Samuel R. Randall
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Maurice Portley and Judge Jon W. Thompson joined.

---

**G O U L D**, Judge:

¶1          Yolanda Manzo appeals the court's grant of summary judgment in favor of her employer Bruce Hayman.  For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          Manzo was hired as an office manager for Bruce M. Hayman, PLLC, (the "Hayman Law Firm") in September 2011.  She resigned from her employment at the firm a few months later, on November 28, 2011.  During her short term of employment, Hayman, the sole attorney in the firm, and his colleague F. Aguirre, would make sexual remarks about female clients in Manzo's presence.  In addition, Hayman would sometimes ask Manzo if she thought the clients were "pretty."  These comments were not made often, perhaps only "a couple of times," and Manzo did not pay attention to them.

¶3          On October 23, 2011, Manzo received the following email from Aguirre:

> pleaee [sic] forward to Yolanda [Manzo]. I don't know her e-mail address and just got her phone number.  Should have gotten all that while Ii [sic] was f**king her on your desk.  Did your disk [sic] smell like pu**y?

Hayman originally sent the email to F. Aguirre asking him to forward a business-related email trail to Manzo.  Although the cover email referencing Manzo was not intended to be forwarded to her, F. Aguirre inadvertently forwarded the entire email to Manzo.  Manzo was shocked by the email, but she did not confront Hayman about it because he was her employer.  Rather, she continued to work at the firm until F. Aguirre angrily confronted her about her job performance during a hectic day at the office.  Following F. Aguirre's outburst, Manzo turned in her resignation letter on November 28, 2011.  In the letter she stated that the working conditions at

the firm were unsatisfactory and she attached a copy of the October 23 email.

¶4        Manzo later sued the Hayman Law Firm and Hayman individually for sexual harassment under the Arizona Civil Rights Act ("ACRA"), for false light invasion of privacy, and for intentional infliction of emotional distress.  Hayman moved for summary judgment on all of Manzo's claims.  Hayman argued Manzo's claims should be dismissed because she could not establish (1) the discriminatory conduct was severe and pervasive, (2) the October 23, 2011 email was made public, and (3) that she suffered severe emotional distress.  In granting Hayman's motion for summary judgment, the court found that the ACRA did not apply to Hayman as an individual.  Additionally, the court determined that Manzo's claim that she was constructively discharged was both untimely and lacked sufficient supporting evidence to create a triable issue of fact.  Manzo timely appealed.[1]

**DISCUSSION**

I.        Standard of Review

¶5        Summary judgment is appropriate "if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law."  *Wells Fargo Bank v. Ariz. Laborers*, 201 Ariz. 474, 482, ¶ 14, 38 P.3d 12, 20 (2002).  If a plaintiff cannot support each essential element of a claim, summary judgment must be granted.  *See Gurr v. Willcutt*, 146 Ariz. 575, 581, 707 P.2d 979, 985 (App. 1985); *see also Schiele v. Charles Vogel Mfg. Co.*, 787 F.Supp. 1541, 1546 (D. Minn. 1992) (stating that "a complete failure of proof regarding an essential element necessarily renders all other facts immaterial").  "In reviewing a trial court's grant of summary judgment, we view the facts in the light most favorable to the party opposing entry of the judgment."  *Lewis v. Debord*, 236 Ariz. 57, 59, ¶ 2, 335 P.3d 1136, 1138 (App. 2014).

II.       ACRA Sexual Harassment Claim

¶6        Manzo alleged that Hayman created a hostile work environment in violation of the ACRA, Arizona Revised Statutes ("A.R.S.") section 41-1463(B)(1).  "To make a prima facie case of a hostile work environment, a person must show 'that: (1) she was subjected to verbal or

---

[1]        On appeal, Manzo does not challenge the trial court's determination that Hayman cannot be sued individually under the ACRA or the dismissal of her false light claim.

physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)); *see also Higdon v. Evergreen Int'l Airlines, Inc.*, 138 Ariz. 163, 166 n.3, 673 P.2d 907, 910 n.3 (1983) (stating that federal Title VII case law is persuasive in the interpretation of the ACRA).

**¶7** "'[T]he working environment must both subjectively and objectively be perceived as abusive.'" *Craig*, 496 F.3d at 1055 (quoting *Fuller*, 47 F.3d at 1527). We examine "the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Id.*; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 923–24 (9th Cir. 2000). In doing so we consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The "standards for judging hostility are sufficiently demanding to ensure that [the ACRA] does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788. As a result, isolated incidents, unless extremely serious, will not amount to discriminatory changes in the "terms and conditions of employment." *Id.*

**¶8** Viewing the record before us in the light most favorable to Manzo, we conclude there are insufficient facts to show that Hayman engaged in severe or pervasive conduct creating a hostile working environment.

**¶9** Manzo's harassment claim is based on (1) a few isolated comments Hayman and F. Aguirre made regarding female clients and the size of their breasts, (2) whether Manzo thought certain women who came into the office were pretty, and (3) the October 23, 2011 email. Manzo argues "[t]he offensive e-mail in conjunction with the pervasive sexual comments resulted in a sexually hostile work environment, which forced [her] to constructively discharge [her] employment on November 28, 2011."

**¶10** "A mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment." *Smith v. ITT Corp.*, 918 F.Supp. 304, 308 (D. Ariz. 1995) (quoting *Harris*, 510 U.S. 21). Hayman's comments about other women in Manzo's presence are not sufficiently severe to implicate the

ACRA. Although unprofessional and inappropriate, they are the unfortunate, yet "'ordinary, tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher*, 524 U.S. at 788 (quoting B. Lindemann & D. Kadue, *Sexual Harassment in Employment Law 175* (1992)). Similarly, discussing whether Manzo thought other women were pretty is not conduct sufficiently severe so that a reasonable person would perceive the workplace as hostile. *See Craig*, 496 F.3d at 1055.

¶11        Manzo has also not shown that the sexual comments were pervasive during the term of her employment. *See Faragher*, 524 U.S. at 787–88 (stating that courts will consider, among other factors, the frequency of the conduct). Manzo conceded during the ACRA investigation that comments were only made "a couple of times," and that when they were made, she did not pay attention to them. Apart from the email, Manzo does not address any specific comments made by Hayman or F. Aguirre in her affidavit; Manzo only vaguely alleges that Hayman's "harassing and discriminatory conduct affected [her] ability to do [her] job." Manzo's deposition testimony is equally vague concerning the frequency and nature of the sexual comments. Manzo testified that on one occasion while she was walking out of work with Hayman he stated that now that he was older he didn't "have a sexual life right now" with his wife.

¶12        The allegations made by K. Aguirre, Manzo's co-worker, also do not show that sexual comments were pervasive while Manzo was working in the office. K. Aguirre stated during the ACRA investigation that Hayman would compare her and her sister's butts, and talk about breasts and sex in the office. However, these statements do not identify when these comments were made or who was present; thus, it is unknown if the comments were made during Manzo's employment or whether Manzo was present when they were uttered. Moreover, such evidence of sexual comments potentially made to other employees at times unrelated to Manzo's term of her employment is insufficient to support her sexual harassment claim; Manzo must show that the severe and pervasive conduct altered *her* working environment. *See Craig*, 496 F.3d at 1055.

¶13        The crux of Manzo's sexual harassment claim is the October 23, 2011 email. Manzo argues the email, taken together with the environment of sexually inappropriate comments, is sufficiently severe and pervasive conduct. We disagree. Although the email is crude and tasteless, it is not conduct directed at Manzo. Hayman wrote the email to F. Aguirre who then inadvertently forwarded it to Manzo. Hayman did not intend for

Manzo to receive the email; it was a cover email to F. Aguirre directing him to forward the underlying email to Manzo.

¶14 Finally, Manzo argues the reasonable cause determination, standing alone, should have defeated summary judgment on her claim. "[A] trial court may determine, under the facts of each case, whether [reasonable cause] determinations are admissible by applying" the Arizona Rules of Evidence. *Bogard v. Cannon & Wendt Elec. Co.*, 221 Ariz. 325, 335, ¶ 36, 212 P.3d 17, 27 (App. 2009); *see also Shotwell v. Donahoe*, 207 Ariz. 287, 294, ¶ 23, 85 P.3d 1045, 1052 (2004). The trial court has discretion to consider whether a reasonable cause determination is probative on a case-by-case basis. *Shotwell*, 207 Ariz. at 294, ¶ 23, 85 P.3d at 1052. Although the court is not bound by the ultimate findings of the reasonable cause determination, it can consider the evidence contained in the investigation.

¶15 Here, the evidence contained in the reasonable cause investigation is the same evidence the court considered in rendering its decision on Manzo's sexual harassment claim. The trial court evidently concluded, as do we, that the ACRA record did not support Manzo's sexual harassment claim.

III. Intentional Infliction of Emotional Distress Claim

¶16 Manzo also seeks damages for intentional infliction of emotional distress (IIED). Manzo must establish (1) Hayman's conduct was extreme and outrageous, (2) Hayman either intended to cause the emotional distress or recklessly disregarded the certainty that it would result from his conduct, and (3) Manzo actually suffered severe emotional distress as a result of Hayman's conduct. *Mintz v. Bell Atlantic Sys. Leasing Intern., Inc.*, 183 Ariz. 550, 553–54, 905 P.2d 559, 562–63 (App. 1995). "[T]he court is required to make an initial determination of the sufficiency of the plaintiff's case." *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 197, 650 P.2d 496, 499 (App. 1982). The court must determine both whether the "acts complained of can be considered as extreme and outrageous" and "whether on the evidence, severe emotional distress can be found." *Id.* (internal citations omitted).

¶17 We need not reach the issue of whether Hayman's conduct was extreme and outrageous, because we conclude Manzo has failed to show she suffered the requisite severe emotional harm. According to Manzo, after receiving the email she was more stressed, uncomfortable, she had knots in her stomach, her appetite decreased, she was nervous and sweaty, and she was unable to sleep. Manzo stated, however, that she was

still able to carry out her duties. The record is limited to Manzo's subjective complaints; she has provided no medical reports or expert testimony to corroborate the emotional harm she suffered as a result of Hayman's conduct.

**¶18**　　　Manzo was required to prove not only that she suffered emotional distress, but that the emotional distress she suffered was severe; based on the record before us, she has not done so. *Midas,* 133 Ariz. at 199, 650 P.2d at 501 ("[A] line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'"); *see e.g., Bodett v. CoxCom Inc.,* 366 F.3d 736, 747 (9th Cir. 2004) (shock, stress, moodiness, and estrangement from friends does not constitute severe emotional distress); *Spratt v. N. Auto Corp.,* 958 F.Supp. 456, 461 (D. Ariz. 1996) ("crying, being stressed and upset, and having headaches . . . is not sufficient"); *Midas,* 133 Ariz. at 199, 650 P.2d at 501 (crying and inability to sleep do not qualify as "severe" emotional distress).

IV.　　　Constructive Discharge Claim

**¶19**　　　Finally, Manzo claims that she was constructively discharged based on Hayman's conduct. However, Manzo did not allege constructive discharge in her complaint. Instead, she argues her assertions of constructive discharge contained in her supplemental disclosure statement "relate back" to the original complaint asserting her ACRA sexual harassment claim.

**¶20**　　　Manzo is incorrect; a supplemental disclosure statement is not an "amended pleading" for purposes of Arizona Rule of Civil Procedure 15(c). *Compare* Ariz. R. Civ. P. 8 (rule addressing pleadings), *with* Ariz. R. Civ. P. 26.1 (rule addressing disclosure statements), *with* Ariz. R. Civ. P. 56 (rule addressing motions for summary judgment). The supplemental disclosure statement dated July 31, 2013, which was attached as an exhibit to Manzo's response to Hayman's motion for summary judgment, is not an amended pleading that can "relate back" to the date of the original complaint within the meaning of the rules. Accordingly, because Manzo resigned on November 28, 2011, and the statute of limitations on her constructive discharge claim is one year, the court correctly concluded her claim was untimely. *See* A.R.S. § 12-541(5) (stating that claims asserting liability created by statute have a one-year statute of limitations).

## CONCLUSION

¶21  For the reasons above, the court's grant of summary judgment is affirmed.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama