FREDERICK S. FOLWELL *vs.* PROVIDENCE JOURNAL COMPANY.

It is no justification for a libel that the publisher gave the name of his informant at the time of publication. *Rice* v. *Cottrell,* 5 R. I. 340, commented on.

Where there is a plea in justification to an action for libel it is a reaffirmation of the defamatory matter, and evidence of the source of the information is inadmissible either as a justification or in mitigation of damages : But where there is no plea in justification such evidence and whatever tends to show the exercise of due care and good faith on the part of the defendant may be shown in mitigation of damages.

Where the publisher of a newspaper printed a defamatory article in his paper as a telegraphic news item, for which he was sued, the mere fact that he made no investigation at the time of publication as to the truth or falsity of the matter does not render evidence of precaution and good faith on his part inadmissible, and he may show in mitigation of damages that he made no investigation at the time because he had found by experience that the source from which the information came was reliable.

The fact that the publisher of a newspaper cannot make an investigation as to the truth or falsity of a telegraphic dispatch affecting a person's reputation in time for publication in his paper, if it is to be printed in it at all, does not tend

to mitigate damages in an action for libel for publishing the article; and a question put to a witness with a view to elicit that fact is irrelevant, and was properly ruled out.

Evidence that an article published in the defendant's newspaper appeared on the same day in other newspapers, for which other suits have been brought and judgments recovered, is not admissible in an action for libel.

In an action for libel the defendant may show that the plaintiff's general reputation is bad, but not his bad conduct in two particular instances.

DEFENDANT'S petition for a new trial.

This was an action for libel for printing in the defendant's newspaper the following article :—

### DEFRAUDED HIS EMPLOYER.

*A Lenox Gardener a Defaulter in the sum of about $7000.*

PITTSFIELD, Mass., April 5.   Considerable of a sensation was caused here and in Lenox by the disclosure to-day that Frederick S. Folwell, until recently head gardener for Anson Phelps Stokes, at the latter's place in Lenox, was a defaulter to the amount of $6000 of [or] $7000 at the time of leaving. Folwell was formerly employed by William Russell Allen, of this city, but a few years ago secured the position of head gardener for Mr. Stokes, and in time became superintendent of his extensive estate at Lenox.   A few months ago Mrs. Stokes, who is an enthusiastic botanist, discovered that Folwell's knowledge of the subject was very superficial, and had him discharged.   He secured a place with Pierre Lorillard, at Newport, and left for that place.

Soon after his departure Mr. Stokes began to receive bills, for which he had already given checks.   An investigation showed that Folwell had incurred many bills in his employer's name, and had appropriated checks given him with which to pay them.   It cannot be stated just what the amount of Mr. Stokes' loss is, but the sum named is approximately right.

When the shortage was discovered  word was sent to Newport, with the idea of having Folwell come here and explain, but he was not there, and had not been since leaving Lenox, and no trace of him has been found.   His wife and child are in this city.

*July* 16, 1896.   STINESS, J.   The defendant is sued for

printing a libel upon the plaintiff in its newspaper, The Providence Daily Journal. The case was tried to a jury, and damages were assessed against the defendant in the sum of $2300. The defendant set up no justification for the libel, but offered evidence in mitigation of damages simply, and it now petitions for a new trial on the grounds of erroneous rulings and excessive damages. It appeared in testimony that the defendant was a member of an association called the New England Associated Press, an agency to collect items of news and to send them to its members, publishers of newspapers in New England and other places. At the trial the plaintiff disclaimed express malice on the part of the defendant, but, relying upon the implication of malice from the falsity of the article, and showing no special damage, he rested his claim for damages, chiefly, upon the gross carelessness of the defendant. Several questions were put by the defendant's counsel for the purpose of showing that it acted with reasonable precaution and in good faith, which were ruled out, and the rulings now come before us on exceptions. The first two exceptions, now pressed by the defendant, relate to the exclusion of testimony to show that there was no investigation of the matter at the time because the source from which the information came had been found by experience to be reliable. The plaintiff replies that evidence of this kind cannot be offered unless the name of the informant be given at time of publication.

The doctrine that a slander could be justified by giving the name of the author originated in *Northampton's* case, 12 Rep. 134. But this rule related to a *justification* simply. It was but a *dictum*, published after the death of Lord Coke, which for a time was followed with some hesitation; but it has long since ceased to be regarded as law. Odgers, Libel & Slander, *162; Starkie, Slander, (Wendell's ed. 1852) chap. 14, and note. Numerous cases, in which the question has arisen, hold that the giving of the name of an informant is no justification, but that the publisher of a libel or a slander is liable, even though he is not the author of it. He may do as much damage in spreading it as if he had

started it.  When, therefore, there is a plea of justification,
evidence of the origin of the slander is not admissible for any
purpose; because it is not a justification in itself, and a plea
of the truth of the words spoken or written is such a re-
affirmation of them as to make their origin immaterial in
the measure of damages.  In view of this development of
the law, it is but natural that expressions are to be found
which may be taken to imply that the name of the author
must be given at the time of the publication.  They are
generally used in opposition to the doctrine of *Northampton's*
case; as in *Dole* v. *Lyon*, 10 Johns. 447, Kent, C. J., says:
"It is not sufficient that the printer, by naming the author,
gives the party aggrieved an action against him."  This is
intended to apply to the exculpation of the defendant.  In
*Talbutt* v. *Clark*, 2 Mood. & Rob. 312, there was a plea of
the truth of the words.  In *Hamilton* v. *Eno*, 81 N. Y. 116,
there was a claim of privilege.  Of *Sheckell* v. *Jackson*, 10
Cush. 25, we only know that Shaw, C. J., said that the
answers about information could have no tendency to prove
the *truth* of the words charged.  In *Rice* v. *Cottrell*, 5 R. I.
340, the name of the author was given at the time, and the
defendant urged that the *onus* was on the plaintiff to show
that he was not thus informed; and the language of the
court, which implies that the defendant may prove in miti-
gation of damages that the slander originated with another,
if the author is named at the time, must be read in view of
the facts of the case.  But, where no justification is claimed,
we know of no case which expressly holds that the fact of
information from another cannot be shown, for what it is
worth, upon the question of damages.  Indeed, there seems
to be a common agreement, starting with the idea of a full
justification, that one who inadvertently repeats a slander is
not equally liable with one who maliciously invents it, unless
he reaffirms it by a plea of its truth.  The object of giving
the name at the time, that it might appear in exculpation
that one was not stating a fact as from himself, has passed
away, as also the notion that it was for the purpose of letting
the plaintiff know who the author was, so that he could sue

him, since all who take part in spreading a slander are liable. The source and character of the information, however, are of consequence in considering a defendant's conduct.    Everybody knows that telegraphic items in a newspaper are not composed in the office of the paper.    It is as plain as though it was so written that they come from some person in another place.    This much may be taken for granted.

Damages for defamation must be a matter of estimate, in most cases, and exemplary or punitive damages will always enter into the verdict when it appears that there was actual malice or a recklessness equivalent thereto.    3 Sutherland on Damages, § 1216.    Hence, to guard against excess in the latter a defendant should be allowed to show the precautions which he took, the circumstances under which the publication was made, or other things relating to it which may affect his culpability.    *Easterwood* v. *Quin,* 2 Brev. (S. C.) 64, (3 Amer. Decis. 700) ; *Smith* v. *Harrison,* 1 F. & F. 565 ; *Saunders* v. *Mills,* 6 Bing. 213 ; *Swift* v. *Dickerman,* 31 Conn. 285 ; *Parker* v. *McQueen,* 8 B. Mon. 16 ; *Hewitt* v. *Pioneer-Press Co.,* 23 Minn. 178 ; *Edwards* v. *Kansas City Times Co.,* 32 Fed. Rep. 813 ; *Scripps* v. *Foster,* 41 Mich. 742 ; 13 Amer. & Eng. Encyc. of Law, pp. 440, 441, and cases cited.    A very good summary of the law of libel, with citations of authority, may be found in Central Law Journal, vol. 42, No. 23, (June 5, 1896,) p. 475.

In this case the editor of the paper was allowed to state that the article was received through the Press Association, and that he knew its methods of collecting news.    But, with nothing more, as the defendant's counsel pertinently suggests, the jury were in the dark as to the character of the source of the information, and were free to infer that the defendant had been guilty of the gross carelessness charged by the plaintiff.    We think that the defendant was entitled to put in testimony tending to show its exercise of due care and good faith, to be considered in the assessment of damages.    Such a course seems to be both just and reasonable, and one which cannot harm a plaintiff, who is to have compensatory damages in any event.    If a defendant can show

that, acting with reasonable precaution, he had been misled and so had unintentionally done wrong to the plaintiff, he ought to be allowed to do so. If, however, his evidence does not amount to this, but shows a reckless or wholly unwarrantable meddling with the plaintiff's reputation, the jury will doubtless take the fact into consideration.

It is urged that, as no investigation of the truth of this article was made by the defendant, evidence to show precaution or good faith was irrelevant. We think this is going too far. Experience is a teacher in the affairs of life. The very fact that one has been found trustworthy takes the place of an investigation into his reports, and naturally leads to a reliance upon them, so that a special inquiry in each case would be needless. This fact enters into and becomes a part of the act itself, and as such should receive consideration.

The question relating to the printed instructions given to agents of the Press Association was properly ruled out. The section quoted seems to be quite immaterial. It is not specific as to any duty, except that correspondents should post themselves on the law of libel. If the article did not otherwise conform to the instructions, it could have been seen at once.

Another question properly ruled out is this : "Is it possible to make investigation to ascertain the falsehood of dispatches, coming as this did, and still publish them, in time for the newspaper going to press?" There is no duty on the part of a newspaper to print articles which may injure the reputation of a person ; and it would be most absurd to say that the haste of a publisher to get this sort of stuff out to the public could in any way tend to mitigate damages. If publishers will spread this kind of so-called "news," they do so at their peril. One may properly say that he was misled by what he supposed to be reliable authority, but to say that he was in such a hurry to print what might be a libel that he could not wait to find out about it, is quite another thing.

The defendant's offer to show that the same article was published by other papers on the same day, for which other suits had been brought, was properly refused. The acts of

other publishers are independent acts, which could in no way affect the defendant. In *Saunders* v. *Mills, supra,* a defendant having been allowed to show at the trial that he had copied an article from another paper, but not allowed to show that it had appeared concurrently in other papers, the motion for a new trial upon this ground was denied. The admissibility of the testimony is urged both to show the jury that whatever injury the plaintiff has sustained to his reputation was not caused by the defendant alone, and that he has received from others an amount which would go to compensate him for his injury. We are aware that it is possible for a plaintiff in a case like this, where many parties are liable for practically the same libel, to recover sums which, in their total amount, may exceed a fair compensation for his injury. But this is a possibility which cannot be avoided in cases where there is no pecuniary standard for the assessment of damages, and where the matter must be left to the discretion of a jury. Moreover, an adoption of the defendant's view would be open to the equally serious objection that a jury might consider the amount recovered of others to be so large that its verdict would be made smaller than it otherwise would be, and so other parties might be made to pay for an injury for which a defendant was equally, or even more largely responsible. The evidence offered must have been intended to produce this result, or else it could have been of no benefit to the defendant. The rule is unquestionable that each defendant is responsible for the injury which is the natural result of his own wrong, and for nothing more or less than that, except as the wrong may have been aggravated by his conduct. Whatever may be the opinion of a court or a jury as to the total amount of judgments, we are bound to assume that the damages in each case have been assessed in accordance with the well settled rules of law. We do not see, therefore, how the evidence of judgments in other cases can be admitted. And so it was held in *Harrison* v. *Pearce,* 1 F. & F. 567 ; *Creevy* v. *Carr,* 7 C. & P. 64. See also *Colledge* v. *Pike,* 56 Law Times Rep. 124.

The remaining exception relates to an offer to show bad

conduct on the part of the plaintiff in two particular cases, but not that the plaintiff's general reputation was bad, which was excluded. The ruling was correct. Undoubtedly a defendant is entitled to show the plaintiff's bad reputation, because it is for injury to his good name that he sues. But the inquiry must be confined to general character or reputation. "Particular acts or instances of misconduct cannot be proved ; nor rumors and reports unless they are so common and prevalent that they have affected the general character." 3 Sutherland on Damages, § 1226 ; 13 Amer. & Eng. Encyc. of Law, pp. 443, 444, and cases cited.

As the result of this opinion is the granting of the petition for a new trial, we need not consider the question of excessive damages.

*Samuel R. Honey & Frank F. Nolan,* for plaintiff.
*Richard B. Comstock & Rathbone Gardner,* for defendant.