**STATE**

v.

**Bernard H. SPEAKS.**

No. 96–31–C.A.

Supreme Court of Rhode Island.

March 14, 1997.

Andrea Mendes, Special Asst. Attorney General and Aaron Weisman, Asst. Attorney General, for Plaintiff.

Richard K. Corley, for Defendant.

## OPINION

FLANDERS, Justice.

According to the Bible, when King Solomon had to judge which of two women was the true mother of the infant they were both claiming, he threatened to sunder the baby in two with a sword and to give each woman an equal half. He hoped the real mother would give up the child rather than allow him to harm the baby.[1]

Here, to prevent his former wife from obtaining custody of their infant child, the defendant, Bernard H. Speaks, held a loaded gun to his baby's head. Like King Solomon, he too hoped the baby's mother would give up the child rather than allow him to harm it. Instead, when defendant balked at relinquishing custody, the mother called the police and had defendant arrested. Thereafter, a Superior Court jury convicted him of assault with a dangerous weapon.

On appeal defendant claims that the trial justice erred in making various evidentiary rulings and in instructing the jury concerning the element of intent in regard to the crime for which he was convicted. He also contends that the trial justice should have declared a mistrial on the basis of the state's alleged nondisclosure of evidence that he had specifically threatened the child's life. For the reasons discussed below, these arguments do not persuade us to reverse the judgment of conviction, and we therefore deny and dismiss defendant's appeal.

### Facts

In 1994 defendant's former wife, Joe–Ann Speaks, had custody of their only child, Bernard Vincent Speaks (baby Bernard), who was six months old at the time of the incident in question. One day defendant met Ms. Speaks at the local market and told her that she would no longer be able to see baby

1. 1 *Kings* 3:16–28.

Bernard because he had successfully obtained custody of him. Ms. Speaks eventually went to Family Court and regained custody of her son pursuant to a court order. But when she went to defendant's house later that day to pick up the baby, defendant refused to answer the door. Ms. Speaks then called the police to help her regain custody.

The Providence police reconnoitered at defendant's home. When the responding officer, Sergeant Thomas Blessington, told defendant that he would have to relinquish custody of baby Bernard to his former wife, defendant became upset. He began to rave about the Family Court's custody decision and about how the Department of Children, Youth and Families (DCYF) had failed to evaluate Ms. Speaks for drug dependence. He further warned Sergeant Blessington that if he came through his front door, "I will take you down." The defendant then emerged from the house and stepped onto the porch with baby Bernard under his left arm and a gun in his right hand. When Sergeant Blessington told defendant that he could lose his job as a guard at the Adult Correctional Institutions if he continued to be uncooperative, defendant stated that he did not care and that he was going to stand his ground.

Although the conversation between the police and defendant continued, at some point defendant sat down in a chair on the porch. He clutched baby Bernard with his left arm and brandished a gun in his right hand. According to Sergeant Blessington, defendant then raised his right hand and put the gun to baby Bernard's head. Sergeant Blessington pleaded with defendant to surrender the child. After a two hour standoff defendant finally obliged.

At trial Sergeant Blessington was asked if he remembered what defendant had said to him. The police officer responded by stating that defendant "threatened to kill the child at this point." Because this alleged threatening statement had not been disclosed by the state to defendant before trial, defendant claims that the trial justice should have declared a mistrial. He also challenges various evidentiary rulings and the trial justice's instructions to the jury concerning the intent necessary to convict the defendant. We shall treat each of these points below.

### Analysis

### I

**The Denial of Defendant's Motion to Pass the Case Based on the State's Alleged Nondisclosure of Defendant's Threats against the Baby's Life**

After Sergeant Blessington testified that defendant had threatened to take baby Bernard's life, defendant moved to pass the case, arguing that the state had failed to disclose this alleged statement to him during pretrial discovery. In response, the prosecutor told the trial justice that defendant's cross-examination of Sergeant Blessington would reveal whether defendant had actually used words to threaten baby Bernard's life or whether the sergeant had merely formed this impression by observing defendant's nonverbal actions in putting the gun to the child's head. The trial justice then denied the motion, and on cross-examination defendant established that there were no threatening words—just conduct:

"Q. Did he use the word 'shoot'?

"A. No.

"Q. Did you tell us yesterday that he threatened to kill the baby at that time?

"A. Yes.

"Q. Did he use the word 'kill'?

"A. No.

"Q. What word did he use?

"A. Um, I don't know whether I can give an analogy here. If I walk up to you, Counselor, and I point a gun at you (Indicating), I don't necessarily say, 'I'm going to blow your brains out.' At this point, if you were a reasonable prudent person, you would think that you were going to be shot and killed. The conveyed intent is expressed, and the action and the deed completes that threat.

"* * *

"Q. So, you interpreted his actions—

"A. That is correct.

"Q. But he didn't say he would kill the baby?

"A. Throughout the conversations, he said his wife would not get the baby, [DCYF] would not get the baby; so, at this point, during the conversation, I am building blocks here that it is his intent to take this baby's life."

██ Although the declaration of a mistrial can be an appropriate (albeit draconian) sanction for discovery violations committed by the prosecution, *State v. Concannon*, 457 A.2d 1350, 1353 (R.I.1983), a trial justice should exercise his or her discretion in exploring whether a less drastic measure is appropriate, and we shall give that decision great weight on appeal, *State v. Stewart*, 663 A.2d 912, 925 (R.I.1995). Because Sergeant Blessington did not actually hear defendant threaten baby Bernard's life, there was nothing in the way of any express statement that had to be disclosed to the defense before trial. As defendant's counsel brought out on cross-examination, the officer merely interpreted what defendant, by his conduct, apparently intended to communicate when he put his gun to baby Bernard's head. Because the state disclosed the circumstances of this incident (as it was perceived by the police) to defendant before trial,[2] there was no discovery violation and thus no basis to declare a mistrial. Moreover, defense counsel's effective cross-examination dispelled any possible misleading impression lingering from Sergeant Blessington's direct examination that defendant had verbally threatened to harm the infant.

## II

### The Trial Justice's Challenged Evidentiary Rulings

██ The defendant next claims that the trial justice erred in excluding the testimony of certain proposed defense witnesses. He maintains that these witnesses would have testified that they had no concern that defendant would harm his son on the afternoon in question because they perceived him to be a loving, protective father. Before trial the state filed a motion in limine objecting to the

testimony of these proposed defense witnesses. It is true that evidence of a pertinent character trait of the accused may be admissible when offered by the defendant to show that he or she acted in conformity therewith on a particular occasion. R.I.R.Evid. 404(a). However, specific instances of a defendant's past conduct are not generally admissible to prove this point. *E.g., Folwell v. Providence Journal Co.*, 19 R.I. 551, 557–58, 37 A. 6, 8 (1896). Rather, under Rule 405(a) of the Rhode Island Rules of Evidence, proof of defendant's character had to be in the form of reputation or opinion testimony concerning the relevant character trait. The defendant, however, sought to introduce evidence of a specific past incident to show that he was a nurturing father who would not intentionally hurt his offspring. But it would have been improper to allow this specific-incident testimony to prove that defendant's character trait of being a loving father was inconsistent with his conduct on the day in question, and the trial justice therefore correctly excluded it.

██ Moreover, the existence of this alleged character trait would not necessarily have been inconsistent with defendant's assaulting his infant son with a dangerous weapon to prevent the child from falling into the hands of a mother that the father considered to be drug-dependent. Further, the state did not have to prove that he had any specific intent to harm baby Bernard. In *State v. Jeremiah*, 546 A.2d 183, 186–87 (R.I. 1988), we defined assault with a dangerous weapon as "any unlawful offer to do corporal injury to another under such circumstances as may create a reasonable apprehension of immediate injury unless the person so threatened takes action or inaction to avoid it, coupled with a present ability to carry the offer into effect." *See id.* at 186 (adding that " '[a]n assault, as ordinarily defined, is any unlawful attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness' "). Consequently,

---

**2.** During pretrial discovery the state provided the defense with a copy of Sergeant Blessington's statement in which he described his observation

of defendant's gun-pointing conduct in a manner that was consistent with his trial testimony.

"it is not a necessary element of the offense that the state prove that the victim was actually put in apprehension or fear of immediate injury, only that the actions of the defendant were such that they would have created a well-founded fear or apprehension of an immediate injury on the part of a reasonable person who was confronted with the same or similar conduct." *Id.* at 187.

The rationale for this objective reasonable-person standard is that

"[w]e view the criminal law as being designed primarily to preserve the public peace. The degree of imperturbability or fortitude of a victim, or the unawareness of an intended victim, should not afford a defense to the criminal prosecution of the wrongdoer. The guilt or innocence of a person charged with assault depends entirely upon what the wrongdoer does and intends and not at all upon what the other apprehends, or does not apprehend." *State v. Boudreau,* 113 R.I. 497, 500–01, 322 A.2d 626, 628 (1974).

■ Although defendant complains that he was prevented from testifying concerning his subjective intent toward the baby during the incident, he in fact testified during his direct examination that he had never intended to harm the child. Thus, the trial justice's rulings that prevented defendant from answering further questions on this same subject were not in error because such testimony would have been duplicative of what was already in evidence.

■ The defendant also sought to have his sister, Gloria Searight, testify concerning her belief about defendant's intentions toward the baby on the day he refused to relinquish custody. This too was properly excluded. Although the sister was present at the scene, she was never allowed into defendant's house. The defendant called her to testify that in her opinion as an eyewitness she was never in fear that defendant would harm the baby. However, this gambit was merely an attempt to have a lay witness give her own opinion on what another person would or would not do in the circumstances presented. As such it was well within the trial justice's discretion to exclude this testimony under Rule 701 of the Rhode Island Rules of Evidence (restricting lay witness's opinions to those that are rationally based on the witness's perceptions and helpful to a clear understanding of the witness's testimony or the determination of the facts at issue).

■ We also agree with the trial justice's rulings excluding defendant's attempts to prove that his former wife was using drugs and was therefore unfit to assume custody of the baby. The trial justice properly barred defendant from relitigating the Family Court's custody decision.

■ Finally, the trial justice did not commit reversible error in allowing evidence that defendant's former wife had custody of the baby as of the time of trial. Because this was the same custodial status that existed at the time of the incident in question, its admission was not unduly prejudicial to defendant. In fact, defendant's refusal to turn the child over to his former wife was based on his disagreement with the Family Court's conclusion that his wife should have custody. Thus, it could hardly have been unduly prejudicial to defendant for the trial justice to admit evidence that defendant's gun-pointing behavior toward his child had not caused the Family Court to rethink its previous custodial award.

In sum, these were all evidentiary determinations that were properly committed to the discretion of the trial justice, and in any event we do not believe defendant was legally prejudiced on their account.

### III

**The Trial Justice's Answers to the Jury's Questions on the Issue of Intent**

■ After the trial justice had instructed the jurors and excused them to begin their deliberations, they returned to ask for a redefinition of the assault charge and to review portions of the testimony of two prosecution witnesses. The trial justice told the jury that the requisite criminal intent could be inferred from the conduct and the acts of a person and that one could infer such intent when there is direct or circumstantial evidence that "tends to suggest" it exists. The

defendant claims that the trial justice's use of the words "tends to suggest" improperly lowered the state's burden of proof. However, we have stated time and again that we shall not allow the extraction of a single sentence or phrase from a trial justice's jury instructions to constitute reversible error. Rather, our practice is always to view the charge in its entirety. *State v. Lamoureaux,* 558 A.2d 951, 954 (R.I.1989). Here, the trial justice repeatedly instructed the jury that the state's burden was to prove every element of the crime charged, including the element of intent, beyond a reasonable doubt. Thus, there was no reversible error in the trial justice's use of the phrase "tends to suggest" in instructing the jury about the circumstantial evidence in the case. We also believe that the trial justice correctly instructed the jury concerning the elements of the crime of assault with a dangerous weapon and the lack of any requirement to prove that the defendant had specifically intended to harm the child.

### Conclusion

For these reasons we deny and dismiss the defendant's appeal, affirm the judgment of conviction, and remand the papers in this case to the Superior Court.

BOURCIER, J., did not participate.