DECISION
In the matter before the Court, Plaintiff Irene DaPonte ("Plaintiff") is a former employee of Defendant Ocean State Job Lot, Inc. ("Ocean State"), which was co-founded by Defendant Marc Perlman, its cunent President and CEO ("Perlman") (inconectly named in the complaint as "Marc Pearlman") (collectively, "Defendants"). Plaintiff alleges that Perlman invaded her statutory right to privacy in an incident which occurred at the North Kingstown Ocean State Job Lot store. On the theory of respondeat superior, Plaintiff alleges that Ocean State is equally culpable. Jurisdiction is pursuant to G.L. 1956 § 9-1-28.1(b).
 I Facts and Travel
Plaintiff was an Assistant Manager at various Ocean State Job Lot stores for over six years prior to the incident which precipitated this claim. At the Job Lot stores, it is the responsibility of the most senior person on duty to greet and "walk the store" with Defendant Perlman whenever he anives at a particular local. Walking the store involves physically walking with Perlman through the store's various departments. The frequency of Perlman's visits to a respective store varies depending on the store's location. On *Page 2 
October 25, 2001, Plaintiff was working at the North Kingstown store and was the most senior staff person on duty when Perlman arrived. Plaintiff proceeded from the back of the store to greet Perlman and encountered him in the area between the shoe table and the rug display near the front of the store. To Plaintiffs surprise, Perlman became quite upset with the set up of the shoe display and the misplacement of a price tag on a rug.
Plaintiff attempted to explain that the shoe display had been set up in accordance with the written document blueprinting the desired set up. Plaintiff had not been personally present when the display was set up, and once the display was assembled Plaintiffs sole responsibility was to maintain the display. Plaintiff alleges that a visibly distraught Perlman yelled loudly at her for approximately three to four minutes. Then, Perlman removed a misplaced price sticker from one of the nearby rugs, and, according to Plaintiff, slammed it onto her shoulder above her breast without warning. Perlman's attack, she claims, was forceful enough to rock her onto the back of her heels.
Though conceding some agitation, Perlman asserts that he merely placed the price tag on Plaintiffs shoulder in order to demonstrate that the tag was not properly sticking on fabric. His concern, he noted, was the ease with which a customer could improperly move a price tag from one item to another. Perlman alleges that there is no way that he could have held the fragile price sticker and placed it on the Plaintiffs shoulder with his thumb and forefinger while simultaneously "slamming" her shoulder. The parties thus disagree as to the manner in which the price tag was undisputedly placed upon the Plaintiffs shoulder. However, it is undisputed that the Defendant neither asked permission nor received consent to touch the Plaintiff. *Page 3 
Plaintiff claimed she was shocked and humiliated, but did not confront Perlman out of fear she would be fired. As she continued the walk though the store with Perlman she was unable to focus on his words and stated she felt a "burning sensation" and experienced trembling lips. After Perlman's departure, Plaintiff returned to the back of the store where she met an assistant manager and other store employees and began to cry, and explained what had occurred. A fellow employee contacted Ocean State's store headquarters and informed Perlman's training coordinator and personnel director of the incident. Plaintiff wrote up an incident report, and a co-worker in the office took a photograph of Plaintiff with the price sticker still visibly affixed to her shoulder. Plaintiff stayed at work the remainder of the day, stating she was afraid she would be fired if she went home. After the incident, Plaintiff spoke with various other members of management. Plaintiff requested assurance that a similar incident would not occur again, but management would not provide such assurance, according to Plaintiff, because Defendant Perlman was the owner of the company.
Subsequent to the incident, Plaintiff claims that she was a nervous wreck when she arrived at work each morning. Approximately one month after the incident, Plaintiff was transferred at her request to the Hope Valley Ocean State Job Lot location. She believed that she would be less likely to see Perlman due to the Hope Valley store's distance from the company's North Kingstown headquarters. Plaintiff claims that Perlman came to the Hope Valley store on more than one occasion and that her anxiety returned at the thought of having to walk him through the store. Soon thereafter, Plaintiff left her position with Ocean State and found work as a direct care worker. She also obtained a second job for a period of time. Plaintiff claims that as a result of changing *Page 4 
jobs she suffered a significant decrease in pay, medical benefits, bonuses and vacation time compared to what she had previously received as a salaried employee with Ocean State.
In her initial complaint before this Court, Plaintiff asserted four claims. Count I alleged a violation of the Plaintiffs right to privacy pursuant to § 9-1-28.1(a)(1). Count II alleged that Ocean State was liable on theories of respondeat superior and strict liability. Count III alleged that Ocean State was liable on theories of negligent hire and supervision. Count IV asserted a claim for intentional infliction of emotional distress.
Defendants have argued throughout the course of this litigation that Workers' Compensation exclusivity bars this Court from considering Plaintiffs claims. Defendants first raised exclusivity in a motion to dismiss all claims pursuant to Super. R. Civ. P. 12(b)(6). The Court denied Defendants' motion. Defendants again raised Workers' Compensation exclusivity in a motion for summary judgment on all claims. At that point, Plaintiff conceded that her claim for intentional infliction of emotional distress (Count IV) could not survive. The Court granted Defendants' motion for summary judgment with respect to Plaintiffs claim for negligent hire and supervision (Count III) but denied the motion with respect to Plaintiffs claims for invasion of privacy (Count I) and respondeat superior and strict liability (Count II). In doing so, the Court refused to disturb the earlier ruling that Workers' Compensation exclusivity does not apply here. At hearing, and in their post-hearing brief, Defendants continue to argue that Plaintiffs remaining claims should be barred by Workers' Compensation exclusivity. *Page 5 
 II Analysis 1. Workers' Compensation Exclusivity
Defendants argue that Workers' Compensation exclusivity bars Plaintiffs claims; however, this Court rejects Defendants' argument based upon the law-of-the-case doctrine. Under the law-of-the-case doctrine, after a "judge has decided an interlocutory matter in a pending suit, a second judge on that court, when confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling." State v. Graham,941 A.2d 848, 856 (R.I. 2008) (emphasis removed) (quoting Richardson v.Smith, 691 A.2d 549, 546 (R.I. 1997)). The doctrine "ensures stability of decisions and avoids contests between judges that could cause a loss of public confidence in the judiciary." Id. (citing Payne v. SuperiorCourt for Providence County, 78 R.I. 177, 184-85, 80 A.2d 159, 163
(1951)). Here, the Court has already ruled that Workers' Compensation exclusivity does not bar Plaintiffs claims. Defendants nevertheless argue that the law of the case doctrine does not apply because the original ruling was based on a limited record which has since been expanded. Although it is true that the law of the case doctrine will not be applied if "evidence has been introduced in the interim that significantly extends or expands the record," this Court does not find such an instance here. See Richardson v. Smith, 691 A.2d 543, 546 (R.I. 1997). Instead, the Court recognizes that the question of Workers' Compensation exclusivity has already been addressed on these facts as a matter of law, and therefore declines to reconsider Defendants' arguments on that issue. *Page 6 
 2. Right to Privacy Claim
Plaintiff alleges that Perlman violated her privacy rights pursuant to § 9-1-28.1 when he forcefully placed, or in her words "slammed," the price sticker onto her shoulder. In examining the credibility of Plaintiff and Defendant Perlman, the Court finds that Perlman did in fact slam or forcefully place the pricing sticker on the Plaintiffs shoulder, which constitutes both an offensive and un-consented to touching. Yet, notwithstanding the glaring inappropriateness of the Defendant's actions, which amount to criminal assault and battery, the Court finds that Perlman's conduct is not actionable under § 9-1-28.1. This unfortunate incident is simply not an occurrence which falls under the language of § 9-1-28.1, nor is it an occurrence which the right to privacy statute was intended to address.
Section 9-1-28.1 provides in part:
 (a) Right to privacy created. It is the policy of this state that every person in this state shall have a right to privacy which shall be defined to include any of the following rights individually:
 (1) The right to be secure from unreasonable intrusion upon one's physical solitude or seclusion;
 (i) In order to recover for violation of this right, it must be established that:
 (A) It was an invasion of something that is entitled to be private or would be expected to be private;
 (B) The invasion was or is offensive or objectionable to a reasonable man; although,
 (ii) The person who discloses the information need not benefit from the disclosure.[1] *Page 7 
Section 9-1-28.1 establishes limited rights of privacy which did not exist at common law. See David A. Elder, Rhode Island Privacy Law— An Overview and Some Important Recent Developments, 31 Suffolk U. L. Rev. 837, 837-38 (1998). Rhode Island's first statute regarding privacy, § 9-1-28, was enacted in 1972 and covered only the unauthorized use of one's name, portrait, or picture for commercial advantage. Pub.L. 1972, ch. 281, § 1. In Kalian v. People Acting Through Community Effort,408 A.2d 608, 608-10 (R.I. 1979), the Rhode Island Supreme Court refused to expand right to privacy protections beyond the areas specifically enumerated within the statute. Rejecting the plaintiffs request to recognize protection for publicity which places a person in a false light in the public eye, the Supreme Court deferred the creation of any new protection to the General Assembly. Id. at 609-610. In response toKalian, the legislature enacted the four-part privacy statute which exists today and which serves as the basis for the Plaintiffs claim.See Elder, Rhode Island Privacy Law at 837-38 (citing Kalian,408 A.2d 608, 608-10 (R.I. 1979)); see also Pub.L. 1980, ch. 403, § 1.
Plantiff argues that Perlman's conduct violated her "right to be secure from "unreasonable intrusion upon one's physical solitude or seclusion" pursuant to § 9-1-28.1(a)(1). Despite the statute's existence for nearly thirty years, the portion of the statute at issue here, § 9-1-28.1(a)(1), has been interpreted on only a handful of occasions. In Swerdlick v. Koch, 721 A.2d 849, 852-53 (R.I. 1998), the Rhode Island Supreme Court considered a claim for invasion of solitude and seclusion where the defendant neighbors had photographed the plaintiffs' activities outside the plaintiffs' home, from which the plaintiffs were operating a business in violation of town zoning laws. In its application of § 9-1-28.1(a)(1) the court stated that a "[c]ourt must interpret *Page 8 
the statute literally and must give the words of the statute their plain and ordinary meanings." Id. at 857 (quoting Accent Design, Inc. v.Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). The court then held that, according to its plain language, § 9-1-28.1(a)(1) "protects against an invasion of `one's physical solitude or seclusion,' neither of which is present when one ventures outside his house or her house into public view." Id. In support of its holding, the court also looked to the Restatement (Second) of Torts, § 652B, cmt. c, [2] which states that "a defendant is subject to liability [for intrusion upon seclusion] only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Id. at 857 n.ll. Therefore, Swerdlick stands for the general proposition that § 9-1-28.1(a)(1) does not apply to conduct occurring within the public purview. See id.; See also Wiggins v. R.I..326 F.Supp.2d 297, 312 (D.R.I. 2004) (holding that the police's alleged excessive use of force on a motorist was outside the scope of § 9-1-28.1(a)(1) because it was in a public street in a place visible to the public).
The incident at issue here occurred in public view. Plaintiff was not in an area of either solitude or seclusion, [3] but rather she and Perlman were in the main area of the *Page 9 
public store at a time when other employees were also present in the store. Although Swerdlick is factually distinguishable in many ways from the case at hand, the court therein squarely held that § 9-1-28.1
protects a person from publicity or intrusion into private places, such as one's home, but not from activities which occur in public.See 721 A.2d at 857. Accordingly, under Swerdlick, Plaintiff has no claim for invasion of privacy pursuant to § 9-1-28.1(a)(1). See id.
In Swerdlick, the plaintiffs additionally alleged that the defendants' actions constituted a violation of their right to privacy because the defendants had intruded upon their "mental well-being" by photographing their actions outside their home. See 721 A.2d at 858. Plaintiff herein asks the Court to adopt a similar view. However, the court inSwerdlick expressly rejected such a right. Id. Instead, the court held that in order for the plaintiffs to prevail, "some invasion of a person's physical solitude or seclusion must have occurred."Id. The court based this conclusion on its unwillingness to "rewrite the statute contrary to its plain meaning to cover alleged psychological invasions." Id. Here, Plaintiff has not established any invasion of her physical solitude or seclusion, and therefore has no claim for invasion of privacy.
Plaintiff further argues that Perlman's physical intrusion upon her person constituted a violation of § 9-1-28.1(a)(1). The Court agrees with the Plaintiff that the law has long been clear on the impropriety of Perlman, an employer, physically disciplining an employee in any manner. See, e.g., Dix v. Martin, 171 Mo.App. 266, 157 S.W. 133, 136
(Mo.App. 1913) (providing that "a master has no authority to chastise his servant, no matter how flagrant his violation of duty may be") (citing 2 Am. Eng. *Page 10 Encyc. of Law (2d Ed.) 965); Matthews v. Terry, 10 Conn. 455,1835 WL 78, *3 (Conn. 1835) (holding that the "right to inflict . . . corporal punishment for misconduct . . . cannot be lawfully exercised, by a master over his hired servant"). Plaintiff had the right and expectation not to be touched. Pearlman's lack of remorse and lack of insight into his offensive conduct is particularly troubling to the Court. However, such behavior does not constitute the type of action to which the privacy law applies or was intended to apply.
Plaintiff urges the Court to find that Liu v. Striuli,36 F.Supp.2d 452, 479 (D.R.I. 1999) supports her interpretation of Rhode Island's privacy statute. In Liu the United States District Court for the District of Rhode Island asserted that `"few things are more personal or private' than one's body." Id. at 479 (quoting Russell v. Salve ReginaCollege, 649 F.Supp. 391, 404 (D.R.I. 1986)). However, the factual circumstances in Liu are vastly different than those present here. In that case the defendant burst into the plaintiffs apartment and brutally raped her. Id. Not only was this a physical intrusion into a place of solitude and seclusion — her apartment, where she had a reasonable expectation of privacy — but it was also a physical intrusion of her person in the most literal and intimate sense. See id. UnlikeLiu, Plaintiff herein was not in a place of solitude or seclusion, nor was there any physical intrusion other than the undignified touching of her shoulder on the exterior of her clothing — a gesture vastly different from the physical intrusion of a rape. See id. Moreover, Plaintiff was touched in public view unlike the plaintiff inLiu, who was both in the privacy of her apartment and whose rape was an invasion of something which was not open to public view and to which society grants the highest expectations of privacy. See id. Liu, therefore, is not sufficiently *Page 11 
analogous to the present case to lend any support to Plaintiffs interpretation of Rhode Island's privacy statute
Furthermore, Plaintiffs interpretation of § 9-1-28.1(a)(1) would turn every assault and battery, which itself is actionable, into a claim for invasion of privacy. Battery is defined as "an act . . . intended to cause, and [which] does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of an assault." Broadley v. R.I.,939 A.2d 1016, 1021 (R.I. 2008) (quoting Hennessey v. Pyne, 694 A.2d 691, 696
(R.I. 1997)). If the Court were to hold that unwanted physical contact alone is sufficient to violate the right to privacy, then every battery would constitute an invasion of privacy without regard to whether the physical contact at issue violates any traditionally recognized expectation of privacy. This interpretation is simply not supported by the statute or by case law.
Although claims for invasion of privacy and battery may be asserted concurrently, [4] the two causes of action are not interchangeable. The interpretation that every battery or assault constitutes a physical intrusion upon a person's solitude and seclusion defies the plain meaning of Rhode Island's privacy statute. Plaintiffs interpretation would render meaningless the statutory requirements of "physical solitude and seclusion" and an intrusion of "something that is entitled to be private or would be expected to be private." See § 9-1-28.1(a)(1).
Case law from other jurisdictions further supports this Court's interpretation of *Page 12 
§ 9-1-28.1(a)(1). The United States Court of Appeals for the Ninth Circuit reviewed a similar privacy claim in Craig v. MO Agencies,Inc., 496 F.3d 1047 (9th Cir. 2007). In upholding summary judgment against the plaintiffs invasion of privacy claim where the plaintiffs supervisor followed her into a public women's bathroom and forcibly kissed her, the Ninth Circuit held that the plaintiff had no "objectively reasonable expectation of seclusion or solitude in the place." Id. at 1061. The court noted that "[although [the defendant's] conduct was inappropriate . . . [the plaintiff] had no reasonable expectation of privacy in the common areas of the restroom. . . ."Id. Though the Ninth Circuit affirmed dismissal of the invasion of privacy claim, it reversed the District Court's dismissal of the plaintiffs assault and battery claims. Id. at 1060.
The Georgia Court of Appeals reached a similar conclusion inJarrett v. Butts, 379 S.E. 2d 583 (Ga.Ct.App. 1989). There, the parents of a high school student sued a teacher and the school system for invasion of privacy and assault and battery. Id. at 584-85. The parents claimed that a teacher, an amateur photographer, ordered their daughter to pose for photographs using a "loud, intimidating and forceful manner and in doing so touched her wrists and hair."Id. at 585. In ruling on the defendants' appeal of the lower court's denial of summary judgment on all counts, the Court of Appeals found that both the teacher and school system were entitled to summary judgment on plaintiffs' invasion of privacy claim because the student had not been "subjected to a physical intrusion analogous to a trespass, as is required to recover for an intrusion upon seclusion."Id. Noting that "even . . . minimal touching . . . can support a cause of action for assault and battery," the court let stand plaintiffs' assault and battery claim against the teacher. Id. at 585-86. *Page 13 
Other courts have rejected invasion of privacy claims involving tortious non-consensual touching at the workplace. See, e.g., Haehn v.City of Hoisington, 702 F. Supp. 1526, 1532 (D. Kan. 1988) ("[Occasional grabbing, touching, and rubbing of [plaintiffs] shoulders does not amount to an actionable invasion of [an employee's] physical being.");Niles v. Jones, No. 2:03-CV-18 TS, 2004 WL 724451, at *4 (D. Utah Feb. 24, 2004) (workplace-related "sexual comments and brief touching could not support a claim of intrusion upon seclusion"); Maus v. Gibbs, No. 96-1257-JTM, 1996 U.S. Dist. LEXIS 19643, at *8 (D. Kan. Dec. 27, 1996) (sexual joking and touching in the workplace fail to establish a claim for invasion of privacy). The themes which run throughout all these cases are first that assault claims and privacy claims do not equate, and second that the right to privacy does not cover the type of offensive but public behavior engaged in by Defendant Perlman.
Finally, Restatement (Second) of Torts § 652B describes particular acts and conduct which have been found to constitute an intrusion upon solitude or seclusion. Such conduct includes intrusion into private quarters, [5] spying on a person in a private area, [6]
eavesdropping, [7] surveillance and investigations, [8] certain newsgathering activities, [9] examinations of private records or papers, [10] and unauthorized photographing, [11] to cite *Page 14 
just a portion of the examples. See 62A Am. Jur. 2d Privacy §§ 42-67 (2005). Examples of acts and conduct constituting intrusions upon employees' solitude or seclusion by employers all pertain to access, misuse or appropriation of medical, [12] financial, [13] and other personal information.[14] See 62A Am. Jur. 2d Privacy § 58 (2005). None of the aforementioned categories of acts can reasonably be seen to encompass the incident which occurred between Plaintiff and Defendant Perlman.
The law is clear and unambiguous that conduct which occurs in public and does not involve private information or activities cannot serve as the basis for an intrusion on seclusion claim. Here, the incident between Plaintiff and Perlman occurred in public, and did not involve private information or activities. Accordingly, this Court holds that Plaintiff has not met her burden of demonstrating that Defendants Perlman or Ocean State violated her rights under § 9-1-28.1(a)(1).
 IV Conclusion
Despite the Court's finding that Defendant Perlman's conduct was inappropriate, offensive, and unprofessional, for the reasons stated above the Court nevertheless denies Plaintiffs claims for invasion of privacy pursuant to § 9-1-28.1(a)(1) and the associated claim based upon respondeat superior. Counsel for Defendants shall submit an appropriate order for judgment.
[1] Rhode Island General Laws § 9-1-28.1 also provides three other rights of privacy: the right to be secure from an appropriation or one's name and likeness under § 9-1-28.1(a)(2); the right to be secure from unreasonable publicity given to one's private life under 9-1-28.1(a)(3); and the right to be secure from publicity that reasonably places another in a false light before the public under 9-1-28.1(a)(4).
[2] Section 9-1-28.1 differs in many significant ways from the Restatement (Second) of Torts § 652B, which states with relation to intrusion upon seclusion that:
 One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.
The Rhode Island Supreme Court has stated that in "interpreting the requirements of . . . of publication of private facts, we find the relevant Restatement (Second) of Torts provision, § 652, to be relevant." Pontibriand v. Sundland. 699 A.2d 856, 864 (R.I. 1997). Similarly, in Swerdlick the Supreme Court stated that Restatement (Second) of Torts § 652B, Intrusion Upon Seclusion, offers "insightful commentary" with respect to § 9-1-28.1(a)(1). Swerdlick, 721 A.2d at 857
n.ll.
[3] "Solitude" is defined as "1. the state of being solitary, or alone; seclusion; isolation; remoteness. 2. a lonely or secluded place."Webster's New Universal Unabridged Dictionary 1728 (1983). "Seclusion" is defined as "1. a secluding or being secluded; retirement; as, to live in seclusion. 2. a secluded spot." Id. at 1639. Further, "secluded" is defined as "1: shut off or kept apart from others; isolated; remote; withdrawn; as, a secluded meeting place." Id.
[4] See David A. Elder, Privacy Torts §§ 2:48-49 (2002) (providing citations to cases in which assault and/or battery are claimed concurrently to intrusion upon seclusion). Examination of such cases demonstrates that in each case contained elements beyond just assault and/or battery type of touching. Each case also contained further elements of seclusion, invasion of space, or area of expected privacy. See, e.g.. Berthiaume's Estate v. Pratt, 365 A.2d 792, 796 (Me. 1976) (doctor intruded into a patient's hospital room as he was dying and lifted patient's head to photograph him despite the patient's previous objection to being photographed); Byfield v. Candler, 33 Ga.App. 275,125 S.E. 905, 908 (1924) (intruder burst into the plaintiff's stateroom on boat and attempted to rape her).
[5] See 62A Am. Jur. 2d Privacy § 42 (2005); See also Mauri v.Smith, 324 Or. 476, 929 P.2d 307 (1996) (intrusion into an apartment deemed a private area); Carter v. Innisfree Hotel, Inc., 661 So.2d 1174
(Ala. 1995) (seclusion in hotel room).
[6] See 62A Am. Jur. 2d Privacy § 44 (2005) (citing Benitez v. KFCNat. Management Co., 305 111. App. 3d 1027, 714 N.E. 2d 1002 (1999) (spying on plaintiff in a restroom facility); Doe by Doe v. B.P.S. GuardServices, Inc., 945 F.2d 1422 (8th Cir.) (spying on plaintiffs in dressing room)).
[7] See 62A Am. Jur. 2d Privacy § 46 (2005) (citing Marichv. MGM/UATelecomm, Inc., 113 Cal. App. 4th 415, 7 Cal. Rptr. 3d 60 (2d Dist. 2003) (recorded telephone conversation)).
[8] See 62A Am. Jur. 2d Privacy §§ 47-49 (2005) (citing PinkertonNat'l. Detective Agency. Inc. v. Stevens. 108 Ga.App.159, 132 S.E.2d 119
(1963) (surveillance in an unreasonable and intrusive manner)).
[9] See 62A Am. Jur. 2d Privacy § 50 (2005) (citing Dietemann v. Time,Inc., 449 F.2d 245 (9th 1971) (intrusion upon plaintiffs seclusion to obtain information and photographs for a magazine article)).
[10] See 62A Am. Jur. 2d Privacy § 54 (2005) (citing Birnbaum v.U.S., 588 F.2d 319 (2d Cir. 1978) (opening and reading sealed mail);Johnson v. Stewart, 854 So. 2d 544 (Ala. 2002) (examining private bank account); Broughtonv. McClatchy Newspapers, Inc., 161 N.C. App. 20,588 S.E.2d 20 (2003) (prying into confidential personal records)).
[11] See 62A Am. Jur. 2d Privacy § 64 (2005) (citing Husky v. Nat'lBroad. Co., Inc., 623 F.Supp. 1282 (N.D. 111. 1986) (filming a prisoner wearing only gymshorts without consent while in `work-out' cage)).
[12] See Fletcher v. Price Chopper Foods of Trumann. Inc.. 22-F.3d 871 (8th Cir. 2000) (applying Arkansas law); Toomerv. Garrett.155 N.C. App. 462, 574 S.E.2d 76 (2002).
[13] See Toomer, 155 N.C. App. 462, 574 S.E.2d 76.
[14] See, e.g., Roth v. Farner-Bocken Co., 2003 SD 80, 667 N.W.2d 651
(S.D. 2003) (finding an intrusion where an employer read and distributed copies of a letter from an attorney to an employee regarding that employee's workplace discrimination claim against the employer).